1  GIBSON, DUNN & CRUTCHER LLP
   JOEL A. FEUER, SBN 100663
2  JFeuer@gibsondunn.com
   ANDREW J. DEMKO, SBN 247320
3  ADemko@gibsondunn.com
   2029 Century Park East, Suite 4000
4  Los Angeles, California 90067
   Telephone: (310) 552-8500
5  Facsimile: (310) 551-8741

6  GIBSON, DUNN & CRUTCHER LLP
   LINDSEY E. BLENKHORN, SBN 227484
7  lblenkhorn@gibsondunn.com
   555 Mission Street, Suite 3000
8  San Francisco, California 94105-2933
   Telephone: (415)393-8200
9  Facsimile: (415)393-8306

10 Attorneys for Defendants
   BIDZ.COM, INC., DAVID ZINBERG
11 and LAWRENCE Y.KONG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| RAMON GOMEZ, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIDZ.COM, INC., and DAVID ZINERG,<br><br>Defendants, | Lead Case No. CV09-03216 CBM-Ex<br><br>Consolidated with Nos. CV09-03671 CBM; CV09-03967 CBM)<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| ROLAND POMFRET, On Behalf of Himself and All Others Similarly Situated,<br><br>Lead Plaintiff,<br><br>vs.<br><br>BIDZ.COM, INC., DAVID ZINBERG, and LAWRENCE Y. KONG,<br><br>Defendants. | Judge: Hon. Consuelo B. Marshall<br>Date:  March 22, 2010<br>Time:  10:00 a.m. |

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

# TABLE OF CONTENTS

**Page**

I. THE COMPLAINT DOES NOT STATE A SECURITIES CLAIM ............... 1

II. THE COMPLAINT FAILS TO ALLEGE FALSITY ....................................... 2

    A. Plaintiffs' Assertion That Bidz Incorrectly Applied EITF 02-16 Does Not Establish Falsity ................................................................. 5

    B. Plaintiffs' Allegations Regarding LA Jewelers and Bidz's Appraisal Provider Do Not Establish Falsity ............................................. 6

III. THE ALLEGATIONS OF SCIENTER ARE INSUFFICIENT ....................... 7

    A. Defendants' Positions Do Not Support An Inference Of Scienter ......... 7

    B. The Confidential Witnesses Do Not Support An Inference Of Scienter ............................................................................................. 8

    C. Knowledge Of GAAP Does Not Support An Inference Of Scienter ....... 9

    D. Defendants' Compensation Does Not Support An Inference Of Scienter ............................................................................................. 10

    E. The Alleged Wholesale Sale Does Not Support An Inference Of Scienter ............................................................................................. 11

i

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

### Cases

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) .................................................................................. 10

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ............................................................................ 1

*Ezra Charitable Trust v. Tyco Int'l, Ltd.*,
  466 F.3d 1, 12 (1st Cir. 2006) ....................................................................... 6, 10

*Higginbotham v. Baxter Int'l Inc.*,
  495 F.3d 753 (7th Cir. 2007) .............................................................................. 8

*In re Bisys Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) .............................................................. 11

*In re CellCyte Genetics Sec. Litig.*,
  2009 U.S. Dist. LEXIS 87828 (W.D. Wash. September 24, 2009) .................... 6

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ............................................................................ 10

*In re Downey Secs. Litig.*,
  2009 U.S. Dist. LEXIS 83443 (C.D. Cal. August 21, 2009) .............................. 5

*In re Gemstar-TV Guide, Int'l, Inc.*,
  2003 U.S. Dist. LEXIS 25884 (C.D. Cal. Aug. 15, 2003) ............................... 10

*In re Homestore.com, Inc. Securities Litig.*,
  252 F.Supp.2d 1018 (C.D. Cal. 2003) .................................................... 4, 5, 8, 9

*In re Oak Tech. Sec. Litig.*,
  1997 U.S. Dist. LEXIS 18503 (N.D. Cal. August 4, 1997) ............................... 6

*In re PXRE Group, Ltd. Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................................................ 8

*In re Read-Rite Corp. Sec. Litig.*,
  335 F.3d 843 (9th Cir. 2003) .............................................................................. 8

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1998) .............................................................................. 7

*In re The Vantive Corp. Securities Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................ 2

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) .............................................................................. 8

*Ley v. Visteon Corp.*,
  543 F.3d 801 (6th Cir. 2008) ....................................................................... 11, 12

*Metzler Invest. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................... 1, 2, 4, 11

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 ..................................................................................................... 10

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

*Raconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ..................................................................................... 11

*SEC v. Delphi Corp.*,
    No. 06-14981, 2008 U.S. Dist. LEXIS 78761 (E.D. Mich. Oct. 8, 2008) ..................... 9

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 1, 7, 11

*Zucco Partners*,
    552 F.3d at 1004 ........................................................................................................ 10

**Statutes**

15 U.S.C. § 78u-4(b)(1) ....................................................................................................... 2

**Other Authorities**

BARRY J. EPSTEIN, ET AL., WILEY GAAP 2008: INTERPRETATION AND
    APPLICATION OF GENERALLY ACCEPTED ACCOUNTING PRINCIPLES 412
    (2007) .......................................................................................................................... 5

iii

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

## I. THE COMPLAINT DOES NOT STATE A SECURITIES CLAIM

Plaintiffs disapprove of the way that Bidz runs its business; they criticize: (1) Bidz's policy of receiving co-op marketing payments from its vendors; (2) how Bidz accounted for these co-op marketing payments; (3) Bidz's fully disclosed relationship with one of its suppliers LA Jewelers; (4) the appraisal firm used by Bidz; and (5) even the profit margin earned by Bidz in connection with a wholesale sale of jewelry in November 2008.  None of these criticisms, even if valid, constitute a federal securities law claim.

Plaintiffs must plead both falsity *and* scienter with particularity; mere conclusions, unsupported by specific facts, will not suffice.  *Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061, 1070 (9th Cir. 2008).  Simply pointing to every financial statement made over a period of a year and a half and concluding they are false without allegations of fact supporting that conclusion does not meet the standard.  Otherwise, and contrary to the heightened pleading requirements of the PSLRA, any shareholder could commence a securities class action based upon the shareholder's subjective belief that there is an error in the financial statements.  That is not the law.[1]

Unlike the classic securities case, there has been no restatement of financial reports by Bidz, no authoritative finding by a regulator that statements to the market were false or misleading, and no disclosure by Bidz itself of prior false statements or omissions.  Instead, Plaintiffs allege in the most generalized way that that **they have**

---

[1] Plaintiffs' cases do not support their argument that that the PSLRA's heightened pleading standard does not apply to falsity.  *See Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (discussing only the PSLRA's requirements for pleading scienter); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (a non-securities case that does not mention the PSLRA).

1

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**concluded** that Bidz's co-op marketing transactions are either "shams" or improperly recorded, that Bidz's business relationship with LA Jewelers is "bogus," that Bidz's cost of inventory is overstated, and that, therefore, all of Bidz's financial statements are false. Yet, Plaintiffs do not allege facts in support of these conclusions. Without greater factual particularity, a court would have "no way of distinguishing plaintiffs' allegations from the countless fishing expeditions which the PSLRA was designed to deter." *In re The Vantive Corp. Securities Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002).

## II.     THE COMPLAINT FAILS TO ALLEGE FALSITY

Plaintiffs cannot satisfy their burden merely by providing a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating *why* those statements were false." *Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (emphasis added). Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Plaintiffs repeatedly aver that the co-op marketing payments reported by Bidz were "fake" and that Bidz's "vendors never paid the marketing contributions." Opp., at 6. But Plaintiffs proffer no factual allegations in support and, as a result, these conclusory allegations should be disregarded. Plaintiffs offer a couple of "examples" in Bidz's financials that purportedly show that the payments are "fake," but the examples do not support Plaintiffs' conclusion.

In their first "example," Plaintiffs point out that Bidz reported "sales and marketing expense" of $2,406,000 and, according to Plaintiffs, Bidz received $2,333,000 in co-op marketing contributions for the same period ($833,000 of which was amortized and $1.5 million of which was unamortized). Plaintiffs scoff at the high ratio of co-op marketing contribution to sales and marketing expense and conclude,

2

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

therefore, that the co-op marketing contributions must be a sham. Opp., at 6. Plaintiffs do not explain (or cite any authority) as to why the ratio between co-op marketing contribution and sales and marketing expense is meaningful or what is the proper or typical ratio between sales and marketing expense and co-op marketing contributions. Bidz's 2007 year-end financial reveals the ratio of sales and marketing expense to co-op marketing contributions: Bidz spent $12,578,000 on sales and marketing for the year and it reported earning $4,800,000 in co-op marketing contributions, or 38% of the amount spent on sales and marketing. RJN, Exh. C, at 81. Whatever proper inferences may be drawn from this ratio of two unrelated numbers, clearly the conclusion that the co-op marketing contribution is a sham or fraudulent is not one of them.

Plaintiffs' second "example" is also unhelpful in showing that the co-op marketing contributions are fake. Plaintiffs claim that Bidz's SEC filings do not reflect any incoming payments for marketing contributions. However, in every quarter in which Bidz accepted marketing contributions, starting in the third quarter of 2007, it reported the total co-op marketing contribution earned as well as receivables relating to the co-op marketing payments. RJN, Exhs. B, C, D, F, G, L, M, N. Plaintiffs claim that there was a "massive decrease in co-op marketing accounts receivables" from $2.9 million at the end of 2007 to $1.5 million at the end of the first quarter of 2008. Opp., at 6; 13. Yet, Plaintiffs fail to explain why Bidz's *collection* of the outstanding receivables from vendors is a sham.[2] Also, Bidz's financial statements demonstrate

---

[2] The financial statements confirm that the receivable was collected by Bidz. Thus, the 2008 10-K (RJN, Exh. L, at 300-01) states the receivable from vendors for co-op marketing contributions, **less allowance for doubtful accounts**, for December 31, 2007 was $2.9 million. The first quarter 2008 10-Q (RJN, Exh. D, at 130-31) states that the receivable, **less allowance for doubtful accounts**, as of March 31, 2008 was $1.5 million. In other words, these figures
[Footnote continued on next page]

3

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

that Bidz was recording ever-increasing amounts of consideration earned from co-op marketing, and when measured against the fluctuating accounts receivable for payment of such consideration, it is clear that the consideration was paid and received from the vendors. *See* Attachment 1 to Motion.

Plaintiffs also claim that the November 2008 write-down of inventory also shows that the co-op marketing payments were a sham. Opp., at 15. As Defendants explained in their Motion, while Bidz reported that its profit margins declined in the third quarter of 2008 from prior quarters, the decline was not the result of recording inflated inventory but rather from selling product at wholesale prices rather than retail prices, just as Bidz explained in its 10-Q filing that quarter. RJN at 239, Exh. G. Plaintiffs' "example" of a sham transaction is basically just a disagreement with the price Bidz received for its inventory. Such decisions are the province of Bidz's business judgment, and are certainly not the basis for a securities action.

In addition to the above allegations of "falsity," Plaintiffs again repeat the litany of allegedly false and misleading statements made by Bidz that Plaintiffs set out in their Complaint, without pleading specific facts indicating *why* those statements were false. Pleading that "virtually every statement made by [a corporate defendant] during the class period related to the company's financial health or performance was, by definition, false" without indicating which specific statements were false and why, is insufficient under the PSLRA. *Metzler Inv.*, 540 F.3d at 1070-71 (plaintiffs "mistake quantity for quality.").

Plaintiffs' reliance on *In re Homestore.com, Inc. Securities Litig.*, 252 F.Supp.2d 1018 (C.D. Cal. 2003), is misplaced and provides a vivid contrast to the conclusory

---

[Footnote continued from previous page]
exclude the amounts that Bidz believed were not likely to be collected and so the reduction in the reserve from December 31, 2007 to March 31, 2008 reflects collections by Bidz.

4

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

allegations in Plaintiffs' complaint.  Homestore.com was accused of a number of revenue-enhancing schemes, **most of which Homestore and its cohorts admitted had no economic substance**.  Homestore was forced to restate seven quarters of revenue because of the improper transactions and accounting, and several of the Homestore executives pled guilty to various criminal charges.  *Id.* at 1020.  The *Homestore* court explained that the issue in that case was not "whether the fraud actually happened, but rather who knew about it . . . ."  *Id.*  By contrast, Bidz's co-op marketing program is just like the commonly used programs by retailers in which they charge their vendors a marketing fee that the retailer will use to purchase advertising for the retailer in general or, in some instances, advertising for the vendor's specific product.  *See, e.g.,* RJN, Exh. A; Decl. of Joel Feuer, Exh. A, BARRY J. EPSTEIN, ET AL., WILEY GAAP 2008:  INTERPRETATION AND APPLICATION OF GENERALLY ACCEPTED ACCOUNTING PRINCIPLES 412 (2007).

### A. Plaintiffs' Assertion That Bidz Incorrectly Applied EITF 02-16 Does Not Establish Falsity

Plaintiffs agree that EITF 02-16 "governs proper classification of co-op marketing contributions."  Opp., at 2.  Plaintiffs argue that Bidz incorrectly applied EITF 02-16 and that that misapplication somehow renders all of Bidz's financial statements during the class period false and misleading.  Plaintiffs argue that the co-op marketing contributions should not have been deducted from the cost of goods sold, but rather, should have been applied to reduce marketing costs because "Bidz used contributions to market specific products from specific vendors."  Opp., at 2; 9.

As "support" for such an assertion, Plaintiffs proffer the irrelevant testimony of two confidential witnesses.  CW4 and CW6 did not work for Bidz during the class period or when Bidz commenced the co-op marketing program in the third quarter of 2007, which alone makes their statements wholly irrelevant and speculative.  Compl., ¶ 52; *In re Downey Secs. Litig.*, 2009 U.S. Dist. LEXIS 83443, at *30 (C.D. Cal.

5

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

August 21, 2009).  CW4 also acknowledged that he/she purchased a combination of generic words, while CW6 admits that he/she "*did not personally* buy ad words or choose the ad words." Compl., ¶ 52 (emphasis added).  Thus, the testimony of both CWs is simply not probative of falsity or any other point relevant to this action.

Moreover, even if it were true that Bidz did not properly apply EITF 02-16 in every single case, the bottom line remains that "[m]erely stating in conclusory fashion that a company's books are out of compliance with GAAP would not itself demonstrate liability under section 10(b) or Rule 10b-5." *See Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 12 (1st Cir. 2006) (internal quotes omitted).  GAAP "tolerates a range of reasonable treatments" and its application is an act of business judgment. *In re Oak Tech. Sec. Litig.*, 1997 U.S. Dist. LEXIS 18503, at *26 (N.D. Cal. Aug. 4, 1997) (internal citations omitted).

Finally, no investor could have been misled by the accounting treatment of co-op marketing contributions because Bidz provides enough detailed information about the accounting treatment in its financials that the amounts of the contributions can be backed out of the financials by any investor who disagrees with Bidz's treatment of the co-op marketing contributions—just as Plaintiffs do in their Opposition. *See In re CellCyte Genetics Sec. Litig.*, 2009 U.S. Dist. LEXIS 87828, at *17 (W.D. Wash. Sep. 24, 2009).

**B.    Plaintiffs' Allegations Regarding LA Jewelers and Bidz's Appraisal Provider Do Not Establish Falsity**

Plaintiffs also take issue with the minimum gross profit guarantee agreement entered into between Bidz and LA Jewelers.  Plaintiffs claim that the agreement is dubious because "it involves a related party," but there is no securities violation merely because a company deals with a related party.  **Bidz repeatedly disclosed LA Jewelers' status as a related party in all of its SEC filings during the class period, and scrupulously reported every quarter the percentage of inventory that Bidz**

6

Gibson, Dunn & Crutcher LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**purchased from LA Jewelers as compared to other vendors, thereby enabling investors to evaluate the arrangement themselves.** *See generally* RJN Exhs. C, D, F, G, L-N. Plaintiffs also aver that the agreement with LA Jewelers was a sham, but again, Plaintiffs allege no facts to support the conclusion.

Plaintiffs also allege that by engaging AIG, an alleged "appraisal mill," to provide allegedly inflated prices, Defendants' financial statements were somehow false and misleading. Plaintiffs again rely on irrelevant CWs, who were *not* jewelry appraisal experts, and on Citron (an anonymous webposter with its own economic agenda – *see* Motion at p.3, notes 2 &3), but fail to show how Bidz's use of AIG constitutes actionable securities fraud. Most pointedly, Plaintiffs fail to identify a single statement made by Defendants with regard to AIG. As such, Plaintiffs' Opposition has failed to correct the pleading defects of the Complaint with regard to falsity, which justifies dismissal of the Complaint.

### III. THE ALLEGATIONS OF SCIENTER ARE INSUFFICIENT

Plaintiffs' Opposition also lays bare the inadequacy of their pleading with respect to scienter. Plaintiffs must plead *particular* facts that raise a "strong inference" of scienter. Even the *least* rigorous showing of scienter requires specific and particular factual pleading that shows "deliberate recklessness," which requires "an extreme departure from the standards of ordinary care . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Silicon Graphics Sec. Litig., Inc.*, 183 F.3d 970, 976 (9th Cir. 1998). Further, to qualify as a "strong inference," it "must be more than merely plausible or reasonable—it must be *cogent* and *at least as compelling as any opposing inference* of non-fraudulent conduct." *Tellabs*, 551 U.S. at 314 (emphases added).

**A. Defendants' Positions Do Not Support An Inference Of Scienter**

First, Plaintiffs argue that "Zinberg was the Company's President" and with his sister owned over 62% of the Company, and Kong was the Company's CFO and

7

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

"involved with the bookkeeping" and "financial statements." Opp., at 17. From these facts, Plaintiffs *presume* that these defendants *knew* that they were misapplying EITF 02-16 and entering into "sham" transactions. Courts routinely reject these conclusory allegations. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009) ("Fraudulent intent cannot be inferred from the Individual Defendants' positions in the Company and alleged access to information.") (citations and quotations omitted); *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848-49 (9th Cir. 2003) (same); *see also In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 538 (S.D.N.Y. 2009) .

*Tellabs* requires *specific* facts that were "known to Defendants and reflected the revenue-recognition scheme in such a way that it would be obvious that [the Company] was improperly inflating revenue." *Diebold*, 590 F.3d at 398. *See In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d at 1032-33 (individual defendant "received and understood internal reports that document[ed] the fraud" and the individual defendant structured the deal "himself" and understood he was fraudulently "buying revenue" with a "triangular transaction" all while "knowing" that Homestore "did not document the 'hidden' third leg of these transactions."). By contrast, Plaintiffs have simply alleged generalized wrongdoing, and then concluded that the Individual Defendants *must have known* about it because of their positions in the company. Such allegations are insufficient to allege scienter.

**B.     The Confidential Witnesses Do Not Support An Inference Of Scienter**

Next, Plaintiffs attempt to resuscitate their otherwise insufficient allegations with statements from confidential witnesses. Courts are rightly skeptical of alleged statements from confidential witnesses used to support vague and conclusory allegations like those in the Complaint. *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing

8

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

inferences. **Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist."***)* (emphasis added).

For instance, CW2 claims that Zinberg "did everything in private," including making all of the decisions for the Company. CW2 is a *former* jewelry buyer who worked at Bidz from March 2000 to July 2003, four years before Bidz was even a public company. Compl., ¶ 122. This testimony is probative of nothing. Plaintiffs provide no explanation for why a jewelry buyer would have any basis for knowing how Zinberg managed the Company during the alleged Class Period from July 31, 2007 to November 10, 2008 – **four years after the witness left Bidz's employ**.

CW1 claims that Defendant Kong, the CFO, was "involved with the bookkeeping and the preparation of financial statements." This allegation is nothing more than a recognition of Kong's title; it is not a **specific fact** demonstrating a strong inference that Kong knew (or was deliberately reckless) that the statements he prepared were materially false, as required by the PLSRA. There needs to be some specific fact that shows that Kong "participated" in the fraud. *See e.g.*, *SEC v. Delphi Corp.*, No. 06-14981, 2008 U.S. Dist. LEXIS 78761, at *26 (E.D. Mich. Oct. 8, 2008) (finding scienter where defendant was responsible for GAAP accounting **and** "she participated in a scheme to mischaracterize a payment"); *see also In re Homstore.com*, 252 F. Supp. 2d at 1033. The allegations suggesting that Kong participated in the fraud are non-existent.

C. **Knowledge Of GAAP Does Not Support An Inference Of Scienter**

Plaintiffs argue that because the Individual Defendants knew the name of the proper accounting rule (EITF 02-16), they must have *knowingly* misapplied it. Opp., at 18. Plaintiffs' allegations of GAAP violations do not suggest a knowing or deliberately reckless state of mind because "the opposing inference of non-fraudulent intent—that these were mistakes by accounting personnel undetected [even by Bidz's auditors] because of faulty accounting controls—is more compelling." *In re Ceridian*

9

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

1  *Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008).[3]  Indeed, the First Circuit

2  considered Plaintiffs' exact GAAP violation—EITF 02-16—and concluded it **did not**

3  demonstrate a strong inference of scienter.  *Ezra Charitable Trust v. Tyco Int'l, Ltd.*,

4  446 F.3d 1, 3 (1st Cir. 2006).  Further, the fact that Plaintiffs have not pled that Bidz's

5  independent, certified auditors also knowingly misapplied GAAP undermines their

6  allegations of a "knowing" violation.  *See In re Gemstar-TV Guide, Int'l, Inc.*, 2003

7  U.S. Dist. LEXIS 25884 at *18-20 (C.D. Cal. Aug. 15, 2003).  And in any event, it is

8  difficult to fathom that a company that follows the "basic presumption" of EITF 02-16

9  *knowingly* violated GAAP.  *See* Mot., at p. 6.

10  **D.  Defendants' Compensation Does Not Support An Inference Of Scienter**

11  Plaintiffs attempt to find an inference of scienter from the fact that the

12  Individual Defendants allegedly had performance-based compensation packages and

13  sold stock during the class period.  Courts have routinely refused to find scienter based

14  on allegations that senior management was motivated to commit fraud due to their

15  performance-based compensation.  *See e.g.*, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47,

16  54 (2d Cir. 1995); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 692-93 (6th Cir.

17  2005).

18  Specifically as to the stock sales, Bidz only established a public market for its

19  securities, making them easily transferable, on June 6, 2007, approximately two

20  months before the start of the "Class Period."  RJN at 17, Exh. B.  Before then, the

21  Individual Defendants did not have a market in which to sell their stock.  *See Raconi v.*

---

[3]  Plaintiffs' SOX certification arguments are equally unavailing.  The Ninth Circuit has rejected any inference of scienter from high-level executives certifying a company's financial statements.  *See Zucco Partners*, 552 F.3d at 1004 ("Boilerplate language in a corporation's 10-K form, or required certifications under Sarbanes-Oxley section 302(a) . . . add *nothing substantial* to the scienter calculus.") (emphasis added).

10

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

*Larkin*, 253 F.3d 423, 436 (9th Cir. 2001).  Further, (1) during much of the class period, Zinberg received no "salary" and was therefore living on his stock sales (RJN at 165, Exh. E); (2) three out of the four sales Kong made were the exercise of options, which must be exercised before they expire, *see Metzler*, 540 F.3d at 1067; (3) neither Zinberg or Kong sold stock at close to the high share price during the class period (and both continued to sell shares at the same frequency even though the price had dropped to around $5 per share), *see Raconi*, 253 F.3d at 435; and (4) neither "clustered" their sale around the high stock price, *see In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430, 444-45 (S.D.N.Y. 2005).

Because the Individual Defendants' stock sales were of a normal frequency and not suspicious in nature, the opposing inference of non-fraudulent intent, or "innocent explanation" outweighs any inference of scienter.  *Tellabs*, 551 U.S. at 314.  As a result, these stock sales are insufficient to adequately plead scienter.

**E.   The Alleged Wholesale Sale Does Not Support An Inference Of Scienter**

Finally, the November 2008 "write off" of inventory, as Plaintiffs call it, does not establish scienter either.  First, Plaintiffs have not even pled a GAAP violation, let alone that the alleged GAAP violation was of a great "magnitude" as Plaintiffs suggest.  Opp. at 24; *see supra* at pp. 5-6; *see* Mot., at 11-13.  Plaintiffs have alleged that the "gross profit percentage" was affected by the alleged write-off and that the accounting error caused an approximate 4% drop in gross profit margin.  Opp., at 24.  Even assuming there was an error, Courts have noted that much greater write-offs or financial restatements are required to raise an inference of scienter.  *See e.g.*, *Ley v. Visteon Corp.*, 543 F.3d 801, 812 (6th Cir. 2008) (noting that an overstatement of total revenue of 5.68% was "such a low percentage of change of total revenue" that it did not "strike us as the type of in your face facts that cry out scienter") (citations and quotations omitted).  Moreover, Plaintiffs are alleging a mere technical violation of GAAP (EITF 02-16) that has the effect, *at most*, of recognizing revenue either "above"

11

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

the line (as a reduction of costs of goods sold) or "below" the line (as an itemized "expense"); overall earnings are unaffected. Mot., at 5-8. Such a technical violation does not "cry out scienter." *Ley*, 543 F.3d at 812.

Dated: March 5, 2010                    GIBSON, DUNN & CRUTCHER LLP


                                        _____/s/_____
                                        By:       Joel A. Feuer

                                        Attorneys for Defendants
                                        BIDZ.COM, INC., DAVID ZINBERG
                                        and LAWRENCE Y. KONG

12

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Gibson, Dunn & Crutcher LLP

**DECLARATION OF SERVICE**

I, Elizabeth Sperry, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, 94105, in said County and State. On March 5, 2010, I served the within:

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

to all interested parties as follows:

| ☑ | **BY CM/ECF FILE & SERVE**: on March 5, 2010, I served a true and correct copy of the above listed document(s) electronically through CM/ECF by uploading the electronic files for each of the above listed document(s). CM/ECF notifies all registered parties via e-mail. |
|---|---|

/s/
By:     Elizabeth Sperry

100824964_2.DOC

Gibson, Dunn & Crutcher LLP

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**