1   GIBSON, DUNN & CRUTCHER LLP
    JOEL A. FEUER, SBN 100663
2   JFeuer@gibsondunn.com
    ANDREW J. DEMKO, SBN 247320
3   ADemko@gibsondunn.com
    2029 Century Park East, Suite 4000
4   Los Angeles, California 90067
    Telephone: (310) 552-8500
5   Facsimile: (310) 551-8741

6   GIBSON, DUNN & CRUTCHER LLP
    LINDSEY E. BLENKHORN, SBN 227484
7   Lblenkhorn@gibsondunn.com
    555 Mission Street, Suite 3000
8   San Francisco, California 94105-2933
    Telephone: (415)393-8200
9   Facsimile: (415)393-8306

10  Attorneys for Defendants
    BIDZ.COM, INC., DAVID ZINBERG
11  and LAWRENCE Y.KONG

12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15

16  RAMON GOMEZ, On Behalf of Himself    | Lead Case No. CV09-03216 CBM-Ex
    and All Others Similarly Situated,
17                                        | Consolidated with Nos. CV09-03671
                Plaintiff,                | CBM; CV09-03967 CBM)
18
        vs.                               | NOTICE OF MOTION AND MOTION
19                                        | TO DISMISS PLAINTIFFS'
    BIDZ.COM, INC., and DAVID ZINERG,     | CONSOLIDATED AMENDED CLASS
20                                        | ACTION COMPLAINT FOR
                Defendants,               | VIOLATION OF THE FEDERAL
21                                        | SECURITIES LAWS

22  ROLAND POMFRET, On Behalf of          | [Proposed Order, Request for Judicial
    Himself and All Others Similarly      | Notice, and Declaration of Joel A.
23  Situated,                             | Feuer filed separately]

24              Lead Plaintiff,

25      vs.                               | Judge: Hon. Consuelo B. Marshall
                                          | Date:   September 27, 2010
26  BIDZ.COM, INC., DAVID ZINBERG,        | Time:   10:00 a.m.
    and LAWRENCE Y. KONG,
27

28              Defendants.

Gibson,
Dunn &
Crutcher
LLP

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

NOTICE IS HEREBY GIVEN that on September 27, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Consuelo B. Marshall of the above-entitled Court, Courtroom 2, 312 North Spring Street, Los Angeles, CA 90012, defendants Bidz.com, Inc. ("Bidz"), David Zinberg, and Lawrence Y. Kong shall and hereby do move the Court for an order dismissing without leave to amend Lead Plaintiffs' Consolidated Amended Complaint.

This Motion is made under the Federal Rules of Civil Procedure 9(b), 12(b)(6) and 15 U.S.C. § 78u et seq. on the basis that Plaintiffs have failed to plead a violation of the federal securities laws. Specifically, Plaintiffs have failed to include sufficient facts that (1) demonstrate any statements attributable to Bidz were actually false or misleading, (2) that the individuals responsible for making the particular statements acted with scienter, and (3) that any of the alleged misstatements caused Plaintiffs and the class an appreciable loss. Accordingly, Plaintiffs have failed to sufficiently plead these essential elements of their proposed cause of action for securities fraud. And because any amendment to the Consolidated Amended Complaint would be futile, it should be dismissed with prejudice.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 22, 2010.

Dated: July 30, 2010                    GIBSON, DUNN & CRUTCHER LLP


                                        /s/
                                 By: _____
                                        Joel A. Feuer

                                 Attorneys for Defendants
                                 BIDZ.COM, INC., DAVID ZINBERG
                                 and LAWRENCE Y.KONG

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ...................................................................................... 1

II. PROCEDURAL BACKGROUND ............................................................ 3

    A.    THE COURT'S MAY 25, 2010 ORDER DISMISSING THE
            CONSOLIDATED COMPLAINT ........................................................ 3

    B.    THE JUNE 22, 2010 CONSOLIDATED AMENDED COMPLAINT ....... 4

          1.    The Parties and Alleged Class Period............................... 4

          2.    Plaintiffs' Allegations of Materially False and Misleading
              Statements During the Class Period.................................. 4

          3.    Plaintiffs' "Substantive Allegations"................................ 5

              a.    Alleged Shill Bidding ............................................ 5

              b.    Alleged Fraudulent Auctions.................................. 6

          4.    The Citron Report ............................................................ 7

          5.    Plaintiffs' New Allegations............................................... 8

III. THE CONSOLIDATED AMENDED COMPLAINT FAILS TO
    ADEQUATELY ALLEGE THE ELEMENTS OF SECURITIES
    FRAUD ...................................................................................................... 9

    A.    PLAINTIFFS HAVE NOT PLED THE ELEMENT OF FALSITY......................... 10

          1.    Plaintiffs Fail To Particularly Plead Any Misstatements. ............. 11

          2.    Plaintiffs Still Fail to Adequately Plead a Misstatement or
              Omission With Respect to the Alleged Use of "Shill
              Bidders."........................................................................... 12

          3.    Plaintiffs Again Fail to Adequately Plead a Misstatement or
               Omission With Respect to the Alleged Use of an "Appraisal
               Mill." ............................................................................... 15

    B.    PLAINTIFFS HAVE *AGAIN* FAILED TO RAISE A STRONG AND COGENT
            INFERENCE OF SCIENTER. ................................................................. 16

          1.    Plaintiffs' Confidential Witnesses Lack Any Indicia of
               Reliability and Fail to Provide Statements Indicative of
               Scienter........................................................................... 18

          2.    Allegations Of A Hands-On Management Style Are
              Insufficient. ....................................................................... 20

           3.    Plaintiffs' Allegations Of Profit Motive, Including Alleged
               "Insider" Stock Sales Fail To Demonstrate A Strong
              Inference Of Scienter. ......................................................... 21

i

Gibson,
Dunn &
Crutcher
LLP

# TABLE OF CONTENTS
## (cont.)

Page(s)

4.   Plaintiffs' Allegations Regarding Defendants' "Propensity
     To Engage In Wrongdoing" Is Still "Irrelevant." ........................... 22

5.   The Allegations as a Whole Do Not Demonstrate a Strong
     and Cogent Inference of Scienter ................................................ 22

C.   PLAINTIFFS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION. ................... 22

IV. CONCLUSION ......................................................................................... 25

Gibson,
Dunn &
Crutcher
LLP

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Akhavan v. Bidz.com,*
 No. BC 414198 .................................................................................................5

*Ashcroft v. Iqbal,*
 129 S.Ct. 1937 (U.S. 2009) ...........................................................................10

*Brodsky v. Yahoo! Inc.,*
 592 F. Supp. 2d 1192 (N.D. Cal. 2008).............................................11, 12, 19

*Dreiling v. Am. Express Co.,*
 458 F.3d 942 (9th Cir. 2006).............................................................................4

*Dura Pharms., Inc. v. Broudo,*
 544 U.S. 336 (2005) ......................................................................................9, 10

*Glazer Capital Mgmt., LP v. Magistri,*
 549 F.3d 736 (9th Cir. 2008)..............................................................17, 20, 22

*Hassan v. Bidz.com, Inc.,*
 No. 09-04984 (C.D. Cal.) ..................................................................................5

*In re AOL Time Warner, Inc. Sec. Litig.,*
 503 F. Supp. 2d 666 (S.D.N.Y. 2007) ............................................................24

*In re Daou Sys., Inc.,*
 411 F.3d 1006 (9th Cir. 2005) ........................................................................13

*In re Downey Securities Litig.,*
 2009 U.S. Dist. LEXIS 83443 (C.D. Cal. Aug. 21, 2009) .....................11, 15

*In re IAC/InteractiveCorp Sec. Litig.,*
 695 F. Supp. 2d 109 (S.D.N.Y. 2010) ......................................................15, 16

*In re Maxim Integrated Prods., Inc.,*
 639 F. Supp. 2d 1038 (N.D. Cal. 2009)..........................................................24

*In re Medicis Pharm. Corp. Securities Litig.,*
 689 F. Supp. 2d 1192 (D. Ariz. 2009) ............................................................18

*In re Omnicom Group, Inc. Sec. Litig.,*
 541 F. Supp. 2d 546 (S.D.N.Y. 2008) ............................................................24

*In re Omnicom Group, Inc. Securities Litig.,*
 597 F.3d 501 (2d Cir. 2010) ...........................................................................23

*In re Silicon Graphics Inc.,*
 183 F.3d 970 (9th Cir. 1998) ..........................................................................17

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
 540 F.3d 1049 (9th Cir. 2008) .................................................................passim

Gibson,
Dunn &
Crutcher
LLP

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*Metzler Invest. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ..................................................................10

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ................................................................11, 15

*Raconi v. Larkin.*,
  253 F.3d 423 (9th Cir. 2001) ..................................................................21

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
  633 F. Supp. 2d 763 (Mar. 31, 2009) ..............................................23, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................17, 21

*Tindenbeg v. Bidz.com, Inc.*,
  No. 08-05553 (C.D. Cal.) ..........................................................................5

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ....................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................18, 19, 21, 25

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ........................................................................11, 17
15 U.S.C. § 78u-4(b)(2) ................................................................................17
15 U.S.C.A. § 77k(a) ....................................................................................16

**OTHER AUTHORITIES**

http://www.citronresearch.com/index.php/disclamer/ ....................................7

**RULES**

Fed. R. Civ. P. 9(b) ......................................................................................11

Gibson,
Dunn &
Crutcher
LLP

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Plaintiffs Ramon Gomez and Roland Pomfret have again failed to plead that Defendants Bidz.com, Inc. ("Bidz"), David Zinberg and Lawrence Y. Kong committed a securities law violation. Plaintiffs' Consolidated Amended Complaint ("CAC") suffers from the same pleading defects as their Consolidated Complaint; it fails to allege with the requisite particularity a material misstatement or omission made with scienter. *See* Dkt. # 48, "Order Dismissing Plaintiff's Consolidated Complaint Without Prejudice" ("Order") at 4. In addition to these same defects, Plaintiffs' CAC also fails to plead loss causation. Consequently, the Court should dismiss this case with prejudice. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008).

In response to the Court's Order, Plaintiffs have abandoned their main theory in their prior Consolidated Complaint: Bidz's statements relating to its "gross profit margins" were allegedly false because the margin was "predicated on fraudulent recognition of gross profit and income from non-arms-length related party transactions, sham transactions, and improper accounting." Order at 3-4. Indeed, the CAC has now been scrubbed of all references to improper accounting and revenue recognition.

What is left is an even *less particular* theory of how Bidz's financial (and other) statements were false and misleading this time. Plaintiffs allege that nearly *every single statement* Bidz made between August 14, 2007 through November 28, 2007 (the "Class Period") was false and misleading because Bidz's business model was predicated on "shill bidding" and improper appraisals of its jewelry. *See, e.g.*, CAC ¶ 66. These are not "new" allegations, as they played a minor role in Plaintiffs' Consolidated Complaint. Plaintiffs now contend that these allegations concerning how Bidz allegedly operates its business are the core of the alleged securities fraud.

Plaintiffs' few "new" and minor allegations do not add the particularity and substance that was lacking in their Consolidated Complaint. Plaintiffs rely on short-

1

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Gibson,
Dunn &
Crutcher
LLP

term, low-level and inherently unreliable former Bidz employees as confidential witnesses,[1] but none of them can demonstrate a materially false or misleading statement, let alone present a strong, compelling inference that either Defendants Zinberg or Kong had any knowledge of or were reckless with respect to shill bidding and/or improper appraisals during the Class Period.  Plaintiffs also add an analysts' opinion of Bidz's business model, an allegation about a "LinkedIn" social media profile of an anonymous person claiming to be a Bidz "bidder,"[2] and a declaration of Claudia Liu, Bidz's Chief Operating Officer.  None of these allegations demonstrate— let alone with the requisite particularity—that Bidz made false or misleading statements or present a *strong* and *cogent* inference that any of these alleged false statements were made with scienter.

Finally, Plaintiffs' new-found focus on the alleged shill bidding and improper appraisals raises another problem with their CAC; it now fails to allege loss causation. Plaintiffs claim that two articles on CitronReport.com allegedly revealed the fraudulent business practices.  But those reports admittedly relied on public information with respect to the alleged shill bidding and did not even mention Plaintiffs' allegations of improper appraisals.  Because the reports only amount to the opinions of an anonymous short-seller, they did not, as a matter of law, reveal any "truth" to the market.  Accordingly, Plaintiffs have not demonstrated that Bidz's alleged false and misleading statements caused them a loss.  The fact that Bidz's stock price fell following the publication of negative comments about Bidz's business model by an

---

[1]  These new "witnesses" are even *less* "credible" than the witnesses this Court refused to recognize in Plaintiffs' Consolidated Complaint.

[2]  This "bidder's" profile could have been set up by *any person* as no verification is required to set up an account on LinkedIn.com and the site itself advises that it cannot be relied upon.  *See http://www.linkedin.com/static?key=user_agreement &trk=hb_ft_userag* ("DO NOT RELY ON LINKEDIN [or] ANY INFORMATION THEREIN").

2

Gibson, Dunn & Crutcher LLP

anonymous poster on the internet, with its own agenda, does not mean that Bidz committed securities fraud.

Given that Plaintiffs added little to their Consolidated Complaint and actually made their allegations *less precise*, the Court should dismiss the CAC as well, this time *with prejudice*.

## II.  PROCEDURAL BACKGROUND

### A.  The Court's May 25, 2010 Order Dismissing The Consolidated Complaint

This Court dismissed Plaintiffs' Consolidated Complaint with leave to amend because Plaintiffs had failed to allege that Bidz's public statements were false (Order at 12), and that Plaintiffs failed to allege a cogent and compelling inference of scienter (Order at 28).  The Court rejected Plaintiffs' allegations of alleged false and misleading statements concerning Bidz's financial results.  *See* Order at 6.

Plaintiffs had claimed the statements were false and misleading because they were predicated on "(1) accounting irregularities; and (2) fraudulent business practices."  *Id.*  Their prior claims of accounting irregularities concerned certain alleged violations of Generally Accepted Accounting Principles, most prevalent, EITF 02-16, and alleged related party and "sham" transactions.  *Id.* at 6-11.  Realizing these allegations would never amount to a violation of the federal securities laws, Plaintiffs have abandoned them, omitting them entirely from the CAC.

The Court also dismissed Plaintiffs' remaining claims of fraudulent business practices concerning alleged shill bidding and fraudulent appraisals, which are almost identical to the allegations in the CAC.  *Id.* at 11-12.  Plaintiffs' CAC now focuses on these same allegations, for some reason, hoping they will survive dismissal this time around.

Gibson,
Dunn &
Crutcher
LLP

## B.     The June 22, 2010 Consolidated Amended Complaint

### 1.     The Parties and Alleged Class Period.

Defendant David Zinberg founded Bidz in 1998.  It grew into a leading on-line retailer of jewelry, featuring a live auction format.  Its stock has been traded on the NASDAQ since June 6, 2007.  *Id.* ¶¶ 8-9; Dkt. #37 at 17, Exh. B.[3]  Zinberg is Bidz's CEO and Chairman of its Board of Directors.  Defendant Lawrence Y. Kong has been Bidz's CFO since 2001 and has been a director since 2003.  CAC ¶ 10.

The lead Plaintiff in this case, Roland Pomfret, claims to have purchased Bidz's stock at artificially inflated prices and suffered economic loss as a result of the drop in Bidz's stock price.  *Id.* ¶ 7.  Plaintiffs allege a short, three-and-a-half-month class period between August 13, 2007 and November 28, 2007.  *Id.* ¶ 1.

### 2.     Plaintiffs' Allegations of Materially False and Misleading Statements During the Class Period.

Plaintiffs cite as false or misleading Bidz's SEC filings that reported its financial results (CAC ¶¶ 56, 61, 67, 72) and statements made during "earnings" calls with investors and analysts (*id.* ¶¶ 63, 74).  Plaintiffs also cite Bidz's policy against "shill bidding" and its claim that its auctions are "$1 no reserve" auctions as false and misleading.  *Id.* ¶ 29.  Plaintiffs claim that these statements were false and/or misleading because the company's financial results, any reasons for optimism, and its claims regarding shill bidding and its auction format were allegedly premised on "unethical and fraudulent business practices," amounting to "shill bidding and . . . fake appraisals."  *See, e.g., id.* ¶ 76.

---

[3] Plaintiffs cite exhaustively to Bidz's SEC filings; therefore, the Court may consider them because they are incorporated by reference in the Complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  The Court may also take judicial notice of SEC filings. *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings are subject to judicial notice).  Where Defendants refer to documents that were previously granted judicial notice by this Court in its Order, Defendants refer to Docket # 37.  Defendants again request that this Court grant judicial notice of the documents submitted in Docket # 37.

Gibson,
Dunn &
Crutcher
LLP

### 3.   Plaintiffs' "Substantive Allegations"

#### a.   Alleged Shill Bidding

Plaintiffs *again* accuse Bidz of using shill bidders to artificially increase the price of items sold in its auctions. *See, e.g.*, CAC ¶¶ 30-32. Bidz's published policy, however, is to the contrary—shill bidding is "strictly prohibited." *Id*. ¶ 29. Bidz recognizes, however, that even though prohibited, shill bidding may take place: "[F]rom time to time we are subject to 'prank' bidders who may win auctions but do not intend to purchase our merchandise . . . [which] could adversely affect our results of operations." Dkt. #37 at 136, Exh. D (2007 10K).

Although Plaintiffs have concluded that Bidz engaged in shill bidding, they have not presented any factual allegations to support that conclusion. Plaintiffs only point to the following:

- The hearsay of anonymous internet posters on websites like "Ripoff Report" and "LinkedIn." CAC ¶¶ 36, 42.

- Pleadings in the lawsuit *Tindenberg v. Bidz.com, Inc.*, No. 08-05553 (C.D. Cal.), which settled for the sum of $20,000.00 after the plaintiff lost his motion for class certification. CAC ¶ 40; RJN at 8, Exh. A.[4]

- The declaration of Bidz's Chief Operating Officer Claudia Liu in which she testified that 14,402,007 sales occurred in Bidz's 25,730,845 auctions from 2004 to 2008. CAC ¶ 41. Plaintiffs somehow concluded from this fact that Bidz must have been shill bidding with the respect to the auctions that did not result in a sale, ignoring the more probable inference

---

[4] Plaintiffs also refer to the "other lawsuit" that is still pending. CAC ¶ 40. Plaintiffs presumably refer to one of the two derivative suits that were filed against Bidz. The first, a California state court action entitled *Akhavan v. Bidz.com*, No. BC 414198, was voluntarily dismissed *with prejudice* after the plaintiff's initial complaint was dismissed with leave to amend and plaintiff concluded that he could not amend the complaint to allege a cause of action. RJN at 13, Exh. C. The second, a federal court action entitled *Hassan v. Bidz.com, Inc.*, No. 09-04984 (C.D. Cal.) has also been dismissed once without prejudice, and the plaintiff's third complaint is currently subject to a motion to dismiss. RJN at 14, Exh. D.

5

Gibson, Dunn & Crutcher LLP

of buyer's remorse.  Notably, Plaintiffs also neglect to mention that Liu noted in a similar declaration that Bidz *loses money* on 20-25% of the auctions that result in sales (because the sales price is below Bidz's costs), RJN at 10-11; Exh. B.

- The "testimony" of "confidential witnesses," who are former, short-term, *low-level* Bidz employees.  *See, e.g.*, CAC ¶ 43 (testimony from an "Operations Coordinator"); *id.* ¶ 45 (an account manager); *id.* ¶ 47 (a marketing coordinator); *id.* ¶ 49 (a customer service representative); *id.* ¶ 50 (a billing clerk).  Many of these "confidential witnesses" were not even employed during the Class Period.  *See, e.g., id.* ¶ 44 (CW2 employed from March 2000 to July 2003); *id.* ¶ 45 (CW3 employed from July 2004 to January 2006); *id.* ¶ 47 (CW4 employed from August 2006 through June 2007).  Plaintiffs have not described the job functions of any of these confidential witnesses sufficiently to establish their reliability of their alleged statements.

- The 2008 report of one of Bidz's analysts, Merriman Curhan Ford, that discussed the "risk created by the $1 auctions."  *Id.* ¶ 33.  Plaintiffs fail to explain that this very same Report described Bidz as "A Knight in Shining Armor for the Troubled Traditional Jewelry Industry" and deemed Bidz a "buy."  RJN at 28, Exh. E.

**b.    Alleged Fraudulent Auctions**

Plaintiffs *again* claim that Bidz used American International Gemologists ("AIG") to fraudulently appraise its jewelry.  CAC ¶ 51.  Confidential witnesses, who were *not* jewelry appraisal experts, noted that they believed AIG did not physically inspect every item, often only inspecting a sample item out of a lot.  Presumably, Plaintiffs mean that out of a lot of thirty, nearly identical rings from a particular manufacturer, AIG would only inspect one.  *Id.* ¶¶ 52-55.  These practices somehow

resulted in inflated valuations of Bidz's products. Plaintiffs allege that the marketplace learned of AIG's allegedly fraudulent appraisals when AIG admitted as much in the *Los Angeles Times* on February 18, 2008, months after the Class Period ended. *Id.* ¶ 51. Plaintiffs did not allege a loss connected to this February 18, 2008 disclosure. In short, Plaintiffs have presented almost verbatim the same allegations contained in Plaintiffs' prior complaint.

### 4.   The Citron Report

Plaintiffs *again* claim that the "efficient" market became aware of the truth of Bidz's shill bidding and appraisal practices when the website CitronReport.com issued a report criticizing Bidz's business model. Citron is in the business of issuing negative "research" reports on public companies, and it expressly disclaims the accuracy of its information.[5] By its own admission, Citron takes short positions in the stocks of the companies that are the subject of its report (thereby "betting" and hoping that the stock price will fall).[6]

According to these "reports," Citron is critical of Bidz's stock price based upon its understanding of Bidz's business model. But the opinion of an online publisher that issues reports designed to influence the stock price of the subject does not demonstrate that any of Bidz's statements were false – only that an anonymous "commentator" (with its own economic agenda) views the facts differently than Bidz's management. Disagreement with Bidz's business model does not establish falsity (or loss causation

---

[5] "Citron Research makes no representations, and specifically disclaims all warranties, express, implied, or statutory regarding the accuracy, timeliness, or completeness of any material contained in this site. You should seek the advice of a security professional regarding your stock transactions." http://www.citronresearch.com/index.php/disclamer/.

[6] Citron discloses on its site: "The principals of Citron Research most always hold a position in any of the securities profiled on the site. Citron Research will not report when a position is initiated or covered. Each investor must make that decision based on his/her judgment of the market." http://www.citronresearch.com/index.php/disclamer/.

7

Gibson, Dunn & Crutcher LLP

for that matter) – only a difference of opinion, which does not constitute a securities law violation.

In short, Citron did not present any facts or admissions, nor did it even suggest Bidz was responsible for the shill bidding. It just took a variety of publicly available facts that could have been interpreted in a number of ways and concluded that shill bidding was occurring at Bidz. Since the Citron Report was published in November 2007, no plaintiff has substantiated the Citron Report's allegations.

As for the appraisal allegations, according to the CAC, Citron's only "fact" was that AIG's name does not appear on a building as its website portrayed. *See* CAC ¶ 81 ("There is no name on the building (except in Photoshop…).") Citron did not expose AIG's alleged practice of only inspecting a "sample" in a large lot of similar items. That was not allegedly disclosed until the *Los Angeles Times* article in February 2008; Plaintiffs do not allege a loss connected with this disclosure. *See id.* ¶ 90.

### 5.   Plaintiffs' New Allegations

As already noted, Plaintiffs are proceeding on essentially the *same* theory of liability with almost entirely the same facts. The only "new" allegations are additional unreliable statements from confidential witnesses, CW4, CW5, and CW6, statements from an analyst that covered Bidz, a LinkedIn profile, and the declaration of Claudia Liu in a different lawsuit. None of them demonstrate that any of Bidz's disclosures were false or that Bidz and/or its executives made those disclosures with scienter.

CW4 is a "Marketing and Creative Coordinator" who worked at Bidz for less than a year from August 2006 through June 2007. CW4 allegedly stated that she/he produced a report that contained bidders who did not end up paying for items. The report allegedly included bidders from Eastern Europe and bidders that had user names of "bidder" plus a number. CW4 did not testify that she/he uncovered shill bidding at Bidz or that Defendants Zinberg or Kong would have known of shill bidding occurring at the company. *See* CAC ¶ 47.

CW5 is a short-term, *low-level*, customer service representative who was employed at Bidz for a couple of months from November 2007 (possibly after the Class Period ended) to April 2008.  She/he allegedly stated that she/he discovered a backroom (more than six months *after* the Class Period ended) where Bidz employees were "bidding up the prices of products on the Company's website."  CAC ¶ 49.  CW5 then bi-passed the Bidz Manager to whom she/he normally reported (Customer Service Manager Gonzalez) and went straight to Defendant Kong, who allegedly told her that "'you cannot discuss this.'"  *Id.*

CW6, another *low-level*, short-term Bidz employee, testified that she cancelled accounts for customers that had not paid and that some of these accounts were located in Lithuania.  *Id.* ¶ 50.  This same employee, who apparently had four or five different positions within the year and a half she worked at Bidz (most coming after the Class Period) (*id.*) also dealt with AIG and allegedly stated that she/he knew that AIG only physically inspected a sample piece of jewelry from a lot of similar pieces (*id.* ¶ 55).

Plaintiffs also offer the testimony of Claudia Liu in which she testified that 14,402,007 sales occurred in Bidz's 25,730,845 auctions from 2004 to 2008.  *Id.* ¶ 41.  Somehow, Plaintiffs have concluded from this fact that Bidz must have been shill bidding.  But such a conclusion (and that is all it is) ignores the more probable inference of buyer's remorse.  Further, Liu also noted in this same declaration that Bidz *loses money* on 18-21% of the auctions that result in sales, meaning customers won auctions at prices *below* cost.  This contradicts any inference of "shill bidding" and strongly suggests that it did not occur.  RJN at 10-11, Exh. B.

## III.  THE CONSOLIDATED AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE THE ELEMENTS OF SECURITIES FRAUD

In order to adequately plead a Section 10(b) claim, Plaintiffs must allege (a) material misrepresentation or omission of fact, (b) scienter, (c) a connection with the purchase or sale of a security, (d) transaction and loss causation, and (e) economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Plaintiffs have

9

failed to properly plead a material misrepresentation or omission of fact, scienter, and loss causation.

Because this putative securities fraud class action is governed by Rule 9(b) and the Private Securities Litigation Reform Act ("PLSRA"), Plaintiffs must plead both the material misrepresentation and scienter elements with *particularity*; mere conclusions, unsupported by specific facts, will not suffice. *Metzler Invest. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061, 1070 (9th Cir. 2008).

As for pleading loss causation, at the least, Plaintiffs must meet the standards for pleading proscribed by Rule 8 and the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (U.S. 2009). Accordingly, Plaintiffs must state a *plausible*— as opposed to merely *possible*—claim for relief. *Id.* Legal conclusions couched as factual allegations do not receive a presumption of truth and are not considered on a motion to dismiss. *Id.*[7]

## A.   Plaintiffs Have Not Pled The Element Of Falsity.

To survive dismissal, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs cannot satisfy their burden under the PSLRA merely by providing a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating *why* those statements were false . . . ." *Metzler*, 540 F.3d at 1070 (emphasis added) (finding that plaintiff failed to allege falsity by listing defendant's SEC filings and public statements and claiming all were false

---

[7] It is not clear following *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), whether the PLSRA's particularity requirement applies to Plaintiffs' allegations of loss causation. *See id.* at 346 ("And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss."). In any event, Plaintiffs have not even met their burden under *Iqbal* of demonstrating a plausible theory of loss causation.

Gibson,
Dunn &
Crutcher
LLP

without explaining why each particular statement was false or misleading). Plaintiffs must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *In re Downey Securities Litig.*, 2009 U.S. Dist. LEXIS 83443, at *4 (C.D. Cal. Aug. 21, 2009) (Walter, J.) (citing *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). Plaintiffs have again failed to meet this exacting burden.

### 1. Plaintiffs Again Fail To Particularly Plead Any Misstatements.

Plaintiffs allege that nearly every word from Individual Defendants Zinberg and Kong was false and misleading during the Class Period, because Bidz's business model was predicated on the improper practices of shill bidding and questionable appraisal practices. In short, Plaintiffs have defied clear Ninth Circuit guidance and pled Bidz's alleged misstatements only in the most *general* manner.

The Ninth Circuit has made it clear that plaintiffs cannot make conclusory allegations that a company's class period statements are *per se* false based on allegations of fraud generally. *Metzler*, 540 F.3d at 1070 ("The TAC alleges that virtually every statement made by Corinthian during the Class Period related to the company's health or performance was, by definition, false. The TAC mistakes quantity for quality."); *see also Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1198 (N.D. Cal. 2008) ("[I]nstead of pointing to how each of Defendants' statements is false, Plaintiffs merely repeat the same few pages of CW statements, which restate the problems [at] Yahoo! . . . . This repetition does not help the Court.").

Plaintiffs' Complaint follows the same "distinct pattern" as the dismissed complaints in *Yahoo!* and *Metzler*:

> The CAC follows a distinct pattern. It presents Defendants' public statements after each financial quarter during the Class Period; then it presents the alleged reasons why these statements were false. . . . Defendants' statements are presented a couple of sentences at a time, often separated by ellipses, with apparently random sentences bolded and italicized. After listing pages of statements, the CAC lists observations by CWs that allegedly contradict all of Defendants' previous statements.

11

Gibson, Dunn & Crutcher LLP

*Id.* 1198-99 (noting Plaintiffs must "specifically describe which of Defendants' statements are shown false by which of a CW's statements"). Plaintiffs have failed to provide any particularity to their falsity allegations.

### 2. Plaintiffs Still Fail to Adequately Plead a Misstatement or Omission With Respect to the Alleged Use of "Shill Bidders."

Even accepting Plaintiffs' generalized pleading, Plaintiffs' allegations fall far short of adequately pleading falsity. Like the Consolidated Complaint, Plaintiffs continue to allege that Bidz used shill or "prank" bidders to "drive up" the price of items that Bidz auctions and that this practice rendered all of Bidz's financial statements during the class period false or misleading. *See, e.g.,* CAC ¶ 76. The Court already ruled that nearly identical allegations "with respect to shill bidders are inadequate." Order at 11. This remains true for a number of reasons.

First, and most importantly, as the Court stated in its Order, "Plaintiffs fail to allege how the use of shill bidders rendered either the financial statements and/or the Company's gross profits incorrect, or otherwise resulted in inflated earnings." Order at 12. Plaintiffs have again failed to do so. It is insufficient under the PLSRA to make conclusory allegations that a company's class period statements are *per se* false based on a plaintiff's allegations of fraud generally. *Metzler,* 540 F.3d at 1070. Here, Plaintiffs provide a litany of allegedly false statements, but fail to explain how and why nearly every statement Bidz made was false, other than to argue that they are false because they do not disclose shill bidding. *See, e.g.,* CAC, ¶ 76 (alleging that Bidz's various SEC filings were materially false and misleading because "the Company was relying upon unethical and fraudulent business practices" such as shill bidding).

In *Metzler,* the plaintiffs alleged that Corinthian Colleges had fraudulently inflated its enrollment to misappropriate federal financial aid funding. 540 F.3d at 1070. As a result of this alleged fraud, the plaintiffs claimed that nearly every statement with respect to the college's financial results were false and misleading. *Id.* In particular, the plaintiffs alleged that the college's statements regarding its financials

12

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

were false because they "'create the false impression that defendants ran their business'" properly, while the college artificially bolstered its financial health through its "fraudulent practices." *Id.*

Plaintiffs present similar allegations.   Plaintiffs simply list a 10-K, 10-Q, or 8-K's worth of statements concerning Bidz's financial status and its business model, and then note that the statements were false because of Bidz's alleged fraudulent practices. *See* CAC ¶¶ 56-60 (concerning Bidz's second quarter 10-Q in 2007).  As a specific example, Plaintiffs do not state with particularity how the alleged shill bidding caused Bidz's public disclosures regarding its financial results in the third quarter of 2007 to be false or materially misleading:

> The Company's pre-tax income for the third quarter of 2007 was $5.2 million, above the Company's original guidance of $3.0-$3.2 million, and compared to $1.0 million in the prior period of 2006.  Net income for the third quarter of 2007 increased to $3.6 million, or $0.14 per fully diluted share on 26.3 million weighted average shares outstanding, compared to net income of $997,000, or $0.04 per fully diluted share on 23.8 million weighted average shares outstanding in the same period of 2006. ***The increase in net income was due primarily to higher gross profit margins on increased revenues.***

CAC ¶ 72 (emphasis in original).  Plaintiffs do not claim that Bidz's pre-tax income for the third quarter in 2007 was not $5.2 million, that net income was not $3.6 million or that any of the figures quoted above were in any way misstated.  In short, Plaintiffs have not "alleged the amount of the putative overstatement or net effect it had on the company's earnings" attributable to the fraud. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005) (internal quotation marks omitted).  Instead, Plaintiffs just list 10 pages worth of statements concerning Bidz's financials and its business model (with certain passages ***emphasized***) followed by allegations that those results were caused by "unethical and fraudulent business practices," including "shill bidding and fake appraisals."  CAC ¶¶ 56-66.  As the Court previously ruled, Plaintiffs simply do not

13

Gibson, Dunn & Crutcher LLP

explain how shill bidding affected Bidz's financials; "these allegations of 'shill bidders' thus do not provide a basis for falsity." Order at 12.

Second, Plaintiffs have failed to properly allege – other than in a conclusory fashion – that Bidz engaged in shill bidding. The Court already concluded that most of Plaintiffs' confidential witnesses were unreliable (Order at 11); with a few exceptions, Plaintiffs again rely on those same confidential witnesses in their CAC. The "new" confidential witnesses also, however, fail to offer reliable evidence of shill bidding.

The "new" CW4 was employed by Bidz *before* the Class Period in this case, and on that basis alone, her/his testimony should be disregarded. CAC ¶ 47 (CW4 was employed by Bidz from August 2006 through June 2007). Even if CW4 was employed by Bidz during the Class Period, all CW4 says is that some of Bidz's customers originated in Eastern European countries and Russia, which hardly means that there was shill bidding, and that a report on new users and buyers that he/she ran listed 25% of the buyers by the word "bidder" plus a number. *Id.* ¶¶ 47-48. It is impossible to infer from these facts (even if credited) that Bidz ran a shill bidding operation.

CW5, for his/her part, does no better. CW5 was a "Customer Service Representative," who apparently held that position from November 2007 (at the *very end* of the class period) through April 2008. *Id.* ¶ 49. Plaintiffs fail to explain why a customer service representative, a position that traditionally relates to answering telephone calls from customers, would have knowledge of a back-room shill bidding operation. Even if CW5's March 2008 "conversation" with Defendant Kong or other Bidz employees (*id.*) was credible, those allegations still fail to show that any particular statement made during the Class Period was false or misleading. Further, it comes nearly six months *after* the fraud was allegedly "disclosed" to the public and weeks before CW5 left her/his job.

CW6, meanwhile, does not state that shill bidding took place, but only that sometimes a winner failed to pay for the product, that some accounts were in Eastern

14

Gibson, Dunn & Crutcher LLP

Europe, and some customers had multiple accounts. *Id.* ¶ 50. Courts should disregard statements by confidential witnesses that are based on hearsay, rumor, or speculation. Order at 11; *In re Downey Securities Litig.*, 2009 U.S. Dist. LEXIS 83443, at *32 (C.D. Cal. Aug. 21, 2009) (Walter, J.) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 997 n.4 (9th Cir. 2009)). And Plaintiffs' addition of a "LinkedIn" profile from an alleged Bidz employee who identified himself as a "bidder" and who lives in Lithuania certainly does not establish that Bidz engages in shill bidding. CAC ¶ 42.[8]

Finally, even if Bidz did engage in shill bidding for some period of time – of which there is no evidence – Plaintiffs must still allege that Bidz made misstatements regarding the alleged shill bidding that were material. Misrepresentations are "material" for the purposes of the federal securities laws if there is a substantial likelihood that reasonable investor would consider it important in making investment decisions. *See, e.g.*, 15 U.S.C § 77k(a); *In re IAC/InteractiveCorp Securities Litig.*, 695 F. Supp. 2d 109, 117 (S.D.N.Y. 2010). Even accepting the CWs' dubious statements as true, they suggest that shill bidding took place on a limited number of occasions, which hardly rises to the level of materially affecting Bidz's financial statements such that it constitutes securities fraud.

### 3. Plaintiffs Again Fail to Adequately Plead a Misstatement or Omission With Respect to the Alleged Use of an "Appraisal Mill."

Similarly, Plaintiffs allege that Bidz used an "appraisal mill," American International Gemologists, to appraise its jewelry and that this practice somehow constitutes actionable securities fraud, despite Plaintiffs' failure to identify a single statement made by Defendants in that regard. Plaintiffs' allegations regarding the alleged appraisal mill are nearly identical to those in the Consolidated Complaint, and the Court already ruled that these allegations "do not suffice to plead falsity" because

---

[8] For reasons already stated, Claudia Liu's declaration likewise offers no help in properly pleading falsity. CAC ¶ 41; RJN at 10-11, Exh. B.

15

Gibson, Dunn & Crutcher LLP

"Plaintiff[s] do[] not allege how the use of appraisal mills rendered the financial statements incorrect or otherwise affected Bidz.com's profit margin." Order at 12.

Likewise, Plaintiffs have again failed to show how the use of alleged appraisal mills rise to the level of securities fraud. As the Court noted in its Order, Bidz fully disclosed in its SEC filings during the class period that "we provide appraisal summaries from third-party gemological laboratories for *some* of our jewelry items." Order at 12; Dkt. #37 at 40, Exh. B (emphasis added). Bidz did not represent that its appraisers physically inspected each piece in a lot of nearly identical pieces. Also, to the extent Plaintiffs disapprove AIG Labs' business practices, Plaintiffs can take that up with AIG Labs, but such allegations do not properly state a case for securities fraud.

***

In short, Plaintiffs have failed to single-out a false or misleading statement or omission with respect to shill bidding or Bidz's appraisal provider. Plaintiffs point only to statements made by third parties such as Citron (which expressly disclaims the accuracy of its information) and anonymous posters as well as statements made by confidential witnesses (whose statements relate to conduct allegedly engaged in outside of the class period), none of whom discredits any statements or omissions by any of the Defendants. As established in Bidz's previous Motion to Dismiss, the existence of disgruntled customers certainly does not establish a false representation by a company. *See In re IAC/InteractiveCorp*, 695 F. Supp. 2d at 120 ("IAC may have faced the occasional disgruntled customer or supplier, but that makes it no different from most companies, for whom some level of customer discontent is a fact of life."). As a result, Plaintiffs' allegations of shill bidding and its fraudulent appraisals fail as a matter of law. 15 U.S.C. § 78u-4(b)(1).

## B.   Plaintiffs Have *Again* Failed to Raise a Strong And Cogent Inference of Scienter.

This Court found that Plaintiffs' failed to plead a cogent and compelling inference of scienter in their first Complaint. Order at 12-13. Plaintiffs few and minor

16

Gibson,
Dunn &
Crutcher
LLP

amendments have not raised a "strong inference" of scienter; in other words, a strong inference that the defendant acted with an intent to deceive, manipulate, or defraud. 15 U.S.C. § 78u-4(b)(2); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). As the Court noted, Plaintiffs must demonstrate with particularity that the "defendants made false or misleading statements either intentionally or with deliberate recklessness." Order at 14 (citing *In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 976 (9th Cir. 1998)). Even the *least* rigorous showing of scienter, "deliberate recklessness," involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 992 n.5 (internal quotation marks omitted). Indeed, such recklessness must "'strongly suggest[] actual intent.'" *Metzler*, 540 F.3d at 1066.

The Court "must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). To qualify as a "strong" inference, it "must be more than merely 'reasonable' or 'permissible'—it must be . . . . cogent and at least as compelling as any opposing inference . . . ." *Id.* at 324. Further, in this context, Plaintiffs must plead scienter with respect to the "individuals who actually made the [allegedly] false statements . . . ." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). In other words, Plaintiffs must plead, in great detail, facts that constitute a strong and cogent inference that Individual Defendants Zinberg and/or Kong were conscious of or, at a minimum, deliberately reckless with respect to the alleged materially false or misleading statements *at the time* those statements were made. *See id.* Plaintiffs again have failed to do so.

Gibson, Dunn & Crutcher LLP

**1.     Plaintiffs' Confidential Witnesses Lack Any Indicia of Reliability and Fail to Provide Statements Indicative of Scienter.**

This Court already found "that the majority of [Plaintiffs'] confidential witness statements are:  (1) not probative of scienter; and (2) too unreliable to be considered." Order at 15; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (confidential witnesses' statements must (1) be reliable and (2) be "indicative of scienter").  And now Plaintiffs rely on largely the same—or, at least, a substantially similar—lineup of confidential witnesses.   Little has changed as the "testimony" from these alleged "witnesses" still utterly fails to demonstrate a *cogent* and *compelling* inference of scienter.

Even though Plaintiffs are now fully aware that they must plead with particularity "'that a person in the position occupied by the source would possess the information alleged,'" *id.*, Plaintiffs still rely heavily on former, short-term, *low-level* employees, most of whom did not work at Bidz during the class period, and who were in no position to possess relevant information about the alleged shill bidding and fraudulent appraisals, let alone what high-level executives and directors knew about the same.  *See, e.g.*, CAC ¶ 44 (testimony from "senior jewelry buyer from March 2000 to July 2003"); *id.* ¶ 45 (testimony from account manager from 2004 through 2006).

And just as before, even though "Plaintiffs number each witness [and] provide a brief job description," the statements Plaintiffs rely on "fail to demonstrate the level of detail required to establish personal knowledge of the Defendants' alleged state of mind."  *In re Medicis Pharm. Corp. Securities Litig.*, 689 F. Supp. 2d 1192, 1210 (D. Ariz. 2009).  In fact, rather than recount "details about the content of . . . conversations" with Defendants, *id.*, most of Plaintiffs' confidential witnesses do not even *mention* Defendants Zinberg and Kong—a problem that notably afflicts, CW4 (CAC ¶ 50) and CW6 (*id.* ¶ 55), two "new" witness on which Plaintiffs rely.

Gibson, Dunn & Crutcher LLP

The same is true for the other "new" "witness" that Plaintiffs have added, CW5, a *mere* "Customer Service Representative," who held that position for approximately *six months* from November 2007 (at the *very end* of the class period) through April 2008. *Id.* ¶ 49.  There are no allegations explaining why a customer service representative (a position that traditionally relates to answering telephone calls from disgruntled customers), who only worked at Bidz for *six months* would have knowledge of a shill bidding operation and interact with Defendant Kong, Bidz's CFO. Further, CW5's testimony is utterly *uncorroborated* by any of Plaintiffs' other evidence or confidential witnesses. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).   In any event, even if CW5's "conversation" with Defendant Kong (CAC ¶ 49) is credited, those allegations still fail to indicate scienter because they surround events occurring in March 2008—months *after* the class period ended in November 2007—and also *well after* Defendant Kong made any allegedly false or misleading statements.

Accordingly, even considering CWs' testimony for the sake of argument, at their very best, Plaintiffs' lineup of confidential "witnesses" paint a disjointed and convoluted picture of the alleged shill bidding, mostly based on assumptions, hearsay, gossip and innuendo.[9]  According to the CWs, shill bidding was either happening in the backroom of Bidz's IT department (*id.* ¶ 49) or Eastern European countries—at various points in the CAC, Russia, Moldova, and/or Lithuania (*id.* ¶¶ 45, 46, 47, 50); the operation was run by "Andre," "Adrian," "Marina Zinberg," and/or "Leon Kuperman" (*id.* ¶¶ 44, 45, 48).  None of the witnesses tie any of this to Defendant Zinberg.  And only CW5's incredible testimony even hints that Defendant Kong may have been involved (but even then it establishes *only* that Defendant Kong may have

---

[9] As an example, the Court cannot credit the CW4's testimony that employees laughing and saying "'it is what it is'" (CAC ¶ 47) demonstrates scienter or falsity. *See Brodsky v. Yahoo!, Inc.*, 592 F. Supp. 2d 1192, 1202 (N.D. Cal. 2008) ("Similarly, recounting jokes about altering the click fraud dial does not satisfy [the] PSLRA's pleading requirements.").

19

Gibson, Dunn & Crutcher LLP

been aware of shill bidding many *months* after he made any of the alleged fraudulent statements). *Id.* ¶ 49.

In short, not only do Plaintiffs fail to allege falsity, the allegations of their confidential witnesses, both old and new, should be disregarded *again* by this Court. They fail to demonstrate enough knowledge to be considered reliable, let alone *any* knowledge that the individual Defendants knew of any alleged falsity *when* Bidz's disclosures were made. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("Glazer has pled no facts that directly demonstrate Magistri possessed the requisite scienter *when* he made the representations." (emphasis added)). The CWs' statements simply do not demonstrate a *cogent* and *compelling* inference of scienter.

### 2.    Allegations Of A Hands-On Management Style Are Insufficient.

Plaintiffs again attempt to plead scienter through the same confidential witnesses who claim that Zinberg had tight control over Bidz. *Compare* CAC ¶¶ 98-99, *with* Consolidated Class Action Compl. ¶¶ 144-46. The only "new" allegation is a passage from Bidz's 2007 second quarter 10-Q, which notes unremarkably (and unsurprisingly) that Bidz relies on the CEO and Chairman of the company. CAC ¶ 97. Other than that, CW2 is the same CW2 who starred in the Consolidated Complaint, and CW6 in the Consolidated Complaint has been rebranded as CW9.[10] *Id.* ¶ 98. Otherwise, the alleged "testimony" is identical. As this Court noted, the Ninth Circuit has continually rejected attempts to plead scienter through allegations of a defendant's hands-on management. Order at 19-21; *see, e.g., Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("As this court has noted on more than one occasion, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter . . . ."). Plaintiffs must plead

---

[10]  There is no showing how CW9, who is alleged to be a marketing executive and online buyer (CAC ¶ 98), could know about all of Zinberg's decisions or how he made them.

Gibson,
Dunn &
Crutcher
LLP

(which they have failed to do here) "some additional allegation of *specific information conveyed to management* related to the fraud." *Id.* (emphasis added). With the exception of CW5, who should be discredited for a number of reasons, Plaintiffs have not pled any instances in which specific information of shill bidding, appraisal mills or anything of the like was ever conveyed to Individual Defendants Zinberg or Kong. Accordingly, these "additional" allegations fail to demonstrate scienter.

### 3.    Plaintiffs' Allegations Of Profit Motive, Including Alleged "Insider" Stock Sales Fail To Demonstrate A Strong Inference Of Scienter.

Plaintiffs offer the same allegations with respect to the Individual Defendants' performance-based compensation, which this Court found insufficient to support a strong inference of scienter. *See* Order at 22 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009)).

Likewise, Plaintiffs offer the same allegations with respect to Defendant Zinberg's stock sales. [11]  With the shorter class period, Plaintiffs could no longer allege that Defendant Kong's stock sales supported an inference of scienter. It is surprising Plaintiffs included the same "insider" selling allegations given this Court's ruling that the fact that "no one could publicly buy/sell Bidz.com stock before the Company's listing on NSADAQ in June, 2007 could be a 'plausible' 'opposing non-culpable explanation" for Defendant Zinberg's . . . sales during the Class Period.'" Order at 23 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).[12]

---

[11]  The same is true for Plaintiffs' attempt to draw an inference of scienter from the Individual Defendants' Sarbanes-Oxley Certifications in Bidz's quarterly SEC filings. As this Court recognized "[s]ignatures are not proxies for scienter." Order at 27; *see also Zucco Partners*, 552 F.3d at 1003-04 ("Boilerplate language in a corporation's 10-K form, or required certifications under Sarbanes-Oxley section 302(a) . . . add nothing substantial to the scienter calculus.").

[12]  Defendant Zinberg's sales were also not suspicious because during much of that time, Zinberg did not collect a salary. During that period, Zinberg took no salary from Bidz. Dkt. # 37 at 165, Exh. E. And his sales did not occur when the stock's price was at its apex. *See Raconi v. Larkin.*, 253 F.3d 423, 435 (9th Cir. 2001) ("When insiders miss the boat this dramatically, their sales do not support an inference" of scienter).

21

Gibson, Dunn & Crutcher LLP

4.     **Plaintiffs' Allegations Regarding Defendants' "Propensity To Engage In Wrongdoing" Are Still "Irrelevant."**

This Court has already ruled that the following allegations (contained in both the Consolidated Complaint and the CAC) are "irrelevant" with respect to demonstrating scienter:

> (1) *other* Bidz.com officers sold unlicensed securities before the initial public offering (and before the Class Period), *see* CC at ¶¶ 151-152 [now CAC ¶¶ 104-05]; (2) that Bidz.com is the "target of numerous lawsuits relating to its business practice", *see id.* at ¶¶ 153-154 [now CAC ¶¶ 106-07, and only one of which is still pending]; (3) the owner of L.A. Jewelry, one of the Company's biggest suppliers, has a criminal history and that Defendant Zinberg has "ties" to the individuals with "criminal histories", *id.* at ¶¶ 155-156, [now CAC ¶¶ 108-109], are irrelevant with respect to either Defendant Zinberg's or Defendant Kong's state of mind. *See Glazer*, 549 F.3d at 745.

These allegations are *still* irrelevant.  Order at 23 n.12.

5.     **The Allegations as a Whole Do Not Demonstrate a Strong and Cogent Inference of Scienter.**

Plaintiffs' scienter allegations taken alone do not remotely suggest that the Individual Defendants made the allegedly fraudulent statements with knowledge or deliberate recklessness.  *Tellabs* also directs courts, however, to look at the allegations as a whole.  And this cuts both ways, as the Ninth Circuit held in *Metzler*:

> Although a defendant cannot gain dismissal by de-contextualizing every statement in a complaint that goes to scienter, a plaintiff cannot *avoid* dismissal by reliance on an isolated statement that stands in contrast to a host of other insufficient allegations.

540 F.3d at 1069 (emphasis in original).  All of Plaintiffs' allegations of scienter are based on rumor, innuendo, and hearsay, and require vast, impermissible leaps of logic.  As a result, Plaintiffs have failed to carry their burden.

C.     **Plaintiffs Fail to Adequately Plead Loss Causation.**

To survive dismissal, Plaintiffs must also allege loss causation—namely, "that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."  *Metzler*, 540 F.3d at 1063.  Plaintiffs have not pled loss causation for either their shill-bidding or fraudulent appraisal allegations because, in

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

neither case, do Plaintiffs identify any disclosures that "revealed to the market" any new information that allegedly caused their loss.

For instance, Plaintiffs fail to establish loss causation for their shill-bidding allegations because the disclosures Plaintiffs identify—the Citron Reports, which purported to "expose[] the Company's questionable bidding . . . practices," CAC ¶ 90—relied on information that was already firmly in the public domain, as even Citron admitted.  In the very reports (and as alleged in the CAC), Citron proclaimed that shill bidding was "[o]ne common complaint that Citron observed in customer postings" (*id.* ¶ 81)—i.e., on public, online message boards available to every analyst, news agency, and investor.  Indeed, Citron boasted that its accusations of shill bidding at Bidz stemmed from "public domain information." *Id.* ¶ 85.[13]  Thus, despite Citron's histrionics that it was "expos[ing]" shill bidding at Bidz (*id.* ¶ 81), Citron's articles are simply "a negative characterization of already-public information" which "does not constitute a corrective disclosure of anything but the [authors'] opinions," *In re Omnicom Group, Inc. Securities Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (collecting cases).  In sum, Plaintiffs have only cited to the disclosure of Citron's "opinions" based on public information, not a definitive public disclosure of fraud.

Additionally, whether public or not, the accusations leveled by Citron—which is in the business of issuing negative reports on public companies while simultaneously "shorting" the stock (*i.e.*, wanting to see the stock do poorly)—as a matter of law, do not go beyond "speculative observations," which do not "comport with the loss causation pleading requirements . . . as recently elucidated by the Ninth Circuit." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 820 (D. Ariz. 2009) (citing *Metzler*, 540 F.3d at 1064), *vacated in part on other*

---

[13]  Elsewhere, Plaintiffs essentially concede that their shill bidding accusations have long been known publicly. *See* CAC ¶ 37 & n.3 (quoting a posting located at http://www.ripoffreport.com/On-Line-Stores/ BIDZ-COM/bidz-com-update-shilling-p-35z8a.htm).

Gibson, Dunn & Crutcher LLP

*grounds*, 690 F. Supp. 2d 959.  The Citron articles lack solid facts, relying on vague references to "what *we believe* to be some extremely questionable bids" (CAC ¶ 81 (emphasis added)), allegations that "the bidding process at Bidz.com leaves a lot of *unanswered questions*" (*id.* ¶ 85 (emphasis added)), and even a rhetorical question: "Do the . . . repetitive bids . . . represent flying fingers of a rogue actor, or a feature of the auction software that only company insiders know about?" (*id.*).

All of these bear a remarkable resemblance to other "speculative observations" that courts have held *do not* properly plead loss causation.  *See, e.g.*, *Teamsters*, 633 F. Supp. 2d at 819 (finding that a disclosure that "'[the company's] *option grant history looks highly questionable*'" did not plead loss causation (emphasis in original)); *In re Maxim Integrated Prods., Inc.*, 639 F. Supp. 2d 1038, 1046 (N.D. Cal. 2009) (disclosure that "[the company] *may* have illicitly backdated stock options" insufficient (emphasis in original)); *In re AOL Time Warner, Inc. Securities Litig.*, 503 F. Supp. 2d 666, 679-80 (S.D.N.Y. 2007) (noting that while a series of "alleged 'partial disclosures,' which comprise a handful of third-party comments plucked from over a year's worth of news, note some concern about AOL or AOLTW's accounting, none of them 'amount to a corrective disclosure because they do not reveal to the market the falsity of the [defendant's prior audit opinions]'" (ellipses omitted)); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) (an analyst's "recharacterization of previously disclosed facts cannot qualify as a corrective disclosure").

Plaintiffs do not even attempt to plead loss causation with respect to their fraudulent appraisal allegations.  The only "fact" about appraisals in the Citron articles was the claim that "[t]here is no name on [AIG's] building (except in Photoshop . . .)." CAC ¶ 85.  This hardly discloses anything to the market that could amount to a *definitive* disclosure that AIG's appraisals were actually fraudulent.  Plaintiffs acknowledge that the allegation that *AIG* does not physically inspect every item it

24

Gibson, Dunn & Crutcher LLP

appraises was revealed in a February 19, 2008 *Los Angeles Times* article (*id.* ¶ 51), which was a full three months *after* the end of the class period. But Plaintiffs do not cite this article in their loss causation allegations or even provide a single allegation of loss connected with the February 19, 2008 article. *See id.* ¶¶ 87-95. Accordingly, Plaintiffs' appraisal-related claims should be dismissed for failure to plead loss causation.

## IV. CONCLUSION

Based on the foregoing, it is clear that Plaintiffs have failed to plead a securities fraud cause of action. Plaintiffs have already had the opportunity to amend their complaint to *add* factual allegations and the same defects have appeared in both iterations; therefore, the CAC should be dismissed with prejudice. *See Metzler*, 540 F.3d at 1072.[14]

Dated: July 30, 2010                          GIBSON, DUNN & CRUTCHER LLP


                                              /s/
                                     By: _____
                                              Joel A. Feuer

                                     Attorneys for Defendants
                                     BIDZ.COM, INC., DAVID ZINBERG
                                     and LAWRENCE Y. KONG

---

[14] Plaintiffs' Section 20(a) claim must also be dismissed because Plaintiffs failed to plead an underlying claim. *See Zucco Partners*, 552 F.3d at 990.

25

Gibson,
Dunn &
Crutcher
LLP

## CERTIFICATE OF SERVICE

I, Valya Walker, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 2029 Century Park East, Los Angeles, California 90067, in said County and State. On July 30, 2010, I served the following document(s):

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

on the parties stated below, by placing a true copy thereof in an envelope addressed as shown below by the following means of service:

| | |
|---|---|
| Jeff S. Westerman<br>  jwesterman@milberg.com<br>Andrew J. Sokolowski<br>  asokolowski@milberg.com<br>MILBERG LLP<br>300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone:  (213) 617-1200<br>Facsimile:   (213) 617-1975 | David A. P. Bower<br>  brower@browerpiven.com<br>BROWER PIVEN<br>488 Madison Avenue, 8th Floor<br>New York, NY  10022<br>Telephone:  (212) 501-9000<br>Facsimile:   (212) 501-0300 |
| Stephen R. Basser<br>  sbasser@barrack.com<br>Samuel M. Ward<br>  sward@barrack.com<br>BARRACK RODOS AND BACINE<br>600 West Broadway, Suite 900<br>San Diego, CA 92101<br>Telephone:  (619) 230-0800<br>Facsimile:   (619) 230-1874 | Joseph Gentile<br>  joseph@sarrafgentile.com<br>Ronen Sarraf<br>  ronen@sarrafgentile.com<br>SARRAF GENTILE LLP<br>116 John Street, Suite 2310<br>New York, NY 10038<br>Telephone:  (212) 868-3610<br>Facsimile:   (212) 918-7967 |
| Brian Oliver O'Marra<br>  bomara@csgrr.com<br>COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101-3301<br>Telephone:  (619) 231-1058<br>Facsimile:   (619) 231-7423 | Charles J. Piven<br>  pievin@browerpiven.com<br>BROWER PIVEN<br>401 East Pratt Street, Suite 2525<br>Baltimore, MD  21202<br>Telephone:  (410) 332-0030<br>Facsimile:   (410) 685-1300 |
| Jessica Slater (via U.S. mail)<br>BROWER PIVEN<br>488 Madison Avenue<br>New York. NY 10022<br>Telephone:  (212) 501-9000<br>Facsimile:   (212) 501-0300 | |

Gibson,
Dunn &
Crutcher
LLP

1

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

☑ **BY MAIL**: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PDF FORMAT**: I caused each such document to be transmitted by PDF Format, to the parties and e-mail addresses indicated above

☐ **BY OVERNIGHT MAIL**: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by overnight mail. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to the overnight mail service with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher LLP, that same day in the ordinary course of business.

☐ **BY PERSONAL SERVICE**: I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **SERVICE BY FAX**: From facsimile machine telephone number (310) 551-8741, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated above and that the transmission was reported as completed and without error.

☐ **BY ELECTRONIC SERVICE**: Pursuant to Court Order dated _____, I have caused service on the parties indicated above by posting each such document on **LexisNexis File & Serve** and its litigation system, which automatically transmits to the parties indicated above, who are registered users.

☑ **BY CM/ECF FILE & SERVE**: on July 30, 2010, I served a true and correct copy of the above listed document(s) electronically through CM/ECF by uploading the electronic files for each of the above listed document(s). CM/ECF notifies all registered parties via e-mail.

Gibson,
Dunn &
Crutcher
LLP

2

1

2    ☐   **(STATE)**      I declare under penalty of perjury under the laws of the State of
                          California that the foregoing is true and correct.
3

4    ☑   **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and
                          correct.
5

6        Executed on July 30, 2010.

7

8                                              /s/
                                      ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
9                                     Valya Walker

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson,
Dunn &
Crutcher
LLP

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**