JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
ANDREW J. SOKOLOWSKI (SBN 226685)
asokolowski@milberg.com
**MILBERG LLP**
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

**BROWER PIVEN**
 A Professional Corporation
DAVID A.P. BROWER (*admitted pro hac vice*)
brower@browerpiven.com
488 Madison Avenue, 8th Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

Counsel for Lead Plaintiff and Liaison Counsel for the Class

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMON GOMEZ, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIDZ.COM, INC., AND DAVID ZINBERG,<br><br>Defendants. | Lead Case No. CV09-3216 CBM (Ex)<br><br>PLAINTIFF'S NOTICE OF RECENT AUTHORITY<br><br>DATE:    October 18, 2010<br>TIME:     10:00 a.m.<br>CTRM:   2<br>JUDGE:  Hon. Consuelo B. Marshall |

PLAINTIFF'S NOTICE OF RECENT AUTHORITY

DOCS\530915v1

**PLEASE TAKE NOTICE** that Lead Plaintiff Roland Pomfret ("Plaintiff") hereby submits this notice of recent authority in further support of Plaintiff's opposition to Defendants'[1] motion to dismiss the Consolidated Amended Class Action Complaint ("Complaint"; Dkt. No. 51), Dkt. No. 59.

In its Order Dismissing Plaintiff's Consolidated Complaint Without Prejudice, dated May 25, 2010, Dkt. No. 48, granting Defendants' prior motion to dismiss, this Court found that Plaintiff's allegations based on information from confidential witnesses who left BIDZ before the beginning of the Class Period were not "reliable . . . with respect to what the Company and the individual Defendants knew/did during the Class Period." *See id*. at 16 & n.11.

In *Iowa Public Employees' Retirement System v. MF Global, Ltd.*, No. 09-3919, 2010 U.S. App. LEXIS 19138 (2d Cir. Sept. 14, 2010) ("*MF Global*") (attached hereto as Exhibit A), the Second Circuit, reversing the dismissal of a securities action, held that the district court's conclusion that allegations of conduct by the issuer that occurred after the class period did not support allegations that the same conduct persisted during the class period "fail[ed] to draw a reasonable inference in the plaintiffs' favor." *See id.* at *15 n.13 (citation omitted). The district court in *MF Global* held that "plaintiffs' risk-management allegations failed to state a claim because they focused on systemic risk-management problems only in February 2008," and there was "nothing to indicate that this was the state of affairs in July 2007, when the Prospectus was issued." *See id.* at **14-15 n.13. Further, the district court stated that "Plaintiffs have offered no factual averments that the alleged misrepresentations and omissions were, in fact, false or misleading at the time the Prospectus was issued." *See id.* at *15 n.13. Relying on the black letter proposition "that courts must 'draw[] all inferences in favor of the

---

[1] "Defendants" are David Zinberg, Lawrence Kong and BIDZ..com, Inc. ("BIDZ").

plaintiff' when ruling on a motion to dismiss," *id.* (citation omitted); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (same), the Second Circuit held that "[d]epending on the problem, its existence in February 2008 may support an inference that it was present six months earlier. This is sufficient to raise [the plaintiffs'] right to relief above the speculative level." *Id.* at *15 n.13 (citations and quotation marks omitted).

In the instant case, the Complaint alleges, through confidential witnesses, that prior to the Class Period, during the Class Period, and after the Class Period, Defendants employed secret shill bidders to place phony bids on items in order to create the false perception of demand and to drive up the bidding and sale prices of the items. *See* Complaint at ¶¶43-50. Defendants attempt to argue that the allegations regarding pre-Class Period and the post-Class Period shill bidding should not be considered by the Court. Plaintiff, however, has correctly asserted that the pre- and post-Class Period allegations are extremely probative and corroborate the continuity of the fraudulent misconduct. Thus, like the Second Circuit in *MF Global*, the Complaint's allegations of pre- and post-Class Period shill bidding by BIDZ support the inference that the practice persisted throughout the Class Period and, thus, Defendants' denials that BIDZ engaged in the practice during the Class Period were materially false and misleading.

Dated: September 24, 2010

**MILBERG LLP**
JEFF S. WESTERMAN
DAVID E. AZAR
ANDREW J. SOKOLOWSKI


*/s/ Andrew J. Sokolowski*
ANDREW J. SOKOLOWSKI

- 2 -
PLAINTIFF'S NOTICE OF RECENT AUTHORITY

DOCS\530915v1

| | |
|---|---|
| 1 | One California Plaza |
| 2 | 300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071-3172 |
| 3 | Telephone: (213) 617-1200<br>Facsimile:  (213) 617-1975 |
| 4 | E-mail:  jwesterman@milberg.com<br>dazar@milberg.com<br>asokolowski@milberg.com |

Counsel for Lead Plaintiff and Liaison Counsel for the Class

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300
E-mail:  brower@browerpiven.com

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
1925 Old Valley Road
Stevenson, Maryland 21153
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300
E-mail:  piven@browerpiven.com

Counsel for Lead Plaintiff Roland Pomfret and Lead Counsel for the Class

# EXHIBIT A



LEXSEE 2010 U.S. APP. LEXIS 19138

**IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, PO-
LICEMEN'S ANNUITY & BENEFIT FUND OF CHICAGO, CEN-
TRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PEN-
SION FUND, STATE-BOSTON RETIREMENT SYSTEM, MF
GLOBAL INSTITUTIONAL INVESTORS GROUP, Plaintiffs-
Appellants, MICHAEL RUBIN, individually and on behalf of all oth-
ers similarly situated, Plaintiff, NANETTE KATZ, FRANK MA-
TASSA, SUNSHINE WIRE AND CABLE DEFINED BENEFIT
PLAN TRUST, individually and on behalf of all others similarly situ-
ated, MICHAEL J. RUDNICK, individually and on behalf of all oth-
ers similarly situated, Consolidated-Plaintiffs, - v. - MF GLOBAL,
LTD., MAN GROUP, PLC, KEVIN R. DAVIS, AMY S. BUTTE, AL-
ISON J. CARNWATH, CHRISTOPHER J. SMITH, CHRISTOPHER
BATES, HENRI J. STEENKAMP, EDWARD L. GOLDBERG,
DEUTSCHE BANK SECURITIES, INC., ABN AMRO ROTHS-
CHILD LLC, BANC OF AMERICA SECURITIES, LLC, BMO
CAPITAL MARKETS CORP., HSBC SECURITIES (USA) INC.,
KEEFE, BRUYETTE & WOODS, INC., SANDLER O'NEILL &
PARTNERS, L.P., WACHOVIA CAPITAL MARKETS LLC, CL
KING & ASSOCIATES, INC., DOWLING & PARTNERS SECURI-
TIES, LLC, E*TRADE SECURITIES LLC, FORTIS SECURITIES
LLC, GUZMAN & CO., ING FINANCIAL MARKETS, LLC,
JEFFRIES & CO., INC., LAZARD CAPITAL MARKETS LLC, M.R.
BEAL & CO., MIZUHO SECURITIES USA, INC., MURIEL
SIEBERT & CO., INC., OPPENHEIMER & CO., INC., PIPER, JAF-
FRAY & CO., RAYMOND JAMES & ASSOCIATES, INC., RBC
MARKETS CORP., ROBERT W. BAIRD & CO., INC., SAMUEL A.
RAMIREZ & CO., INC., SMH CAPITAL INC., STIFEL, NICOLAUS
& CO., INC., SUN TRUST CAPITAL MARKETS, INC., THE WIL-
LIAMS CAPITAL GROUP, L.P., UTENDAHL CAPITAL PART-
NERS, L.P., WELLS FARGO SECURITIES, LLC, WILLIAM
BLAIR & CO., LLC, Defendants-Appellees, MERRILL LYNCH,
PIERCE FENNER & SMITH, INC., CREDIT SUISSE SECURITIES
(USA) LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MOR-
GAN SECURITIES INC., LEHMAN BROTHERS INC., UBS SECU-
RITIES LLC, GOLDMAN SACHS & CO., MORGAN STANLEY &
CO., INC., Consolidated-Defendants-Appellees.**

**Docket No. 09-3919-cv**

- 4 -

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*2010 U.S. App. LEXIS 19138*

**July 15, 2010, Argued
September 14, 2010, Decided**

**PRIOR HISTORY:** **[\*1]**

Plaintiffs appeal from a July 23, 2009 judgment of the United States District Court for the Southern District of New York (Marrero, J.), dismissing their complaint for failure to state a claim. They allege material misstatements and omissions in a prospectus and registration statement of defendant MF Global, Ltd., and assert claims under §§ 11, 12 (a) (2), and 15 of the 1933 Securities Act. AFFIRMED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this opinion.

*Rubin v. MF Global, Ltd., 634 F. Supp. 2d 459, 2009 U.S. Dist. LEXIS 61001 (S.D.N.Y., 2009)*

**COUNSEL:** MARK R. ROSEN, Barrack, Rodos & Bacine, Philadelphia, PA (Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, PA; William J. Ban, Barrack, Rodos & Bacine, New York, NY; Carol V. Gilden, Cohen Milstein Sellers & Toll PLLC, Chicago, IL; and Steven J. Toll, Daniel S. Sommers, Cohen Milstein Sellers & Toll PLLC, Washington, DC on the brief) for Appellants.

DAVID B. ANDERS (Bernard W. Nussbaum, Elaine P. Golin, and Christina T. Shay on the brief), Wachtell, Lipton, Rosen & Katz, New York, NY for MF Global Appellees.

David A. Barrett, Marilyn C. Kunstler, Boies, Schiller & Flexner LLP, New York, NY for Appellee Man Group plc.

Stuart J. Baskin, Herbert S. Washer, and Adam S. Hakki, Shearman & Sterling **[\*2]** LLP, New York, NY for Underwriter Appellees.

Marshall H. Fishman, Freshfields Bruckhaus Deringer US LLP, New York, NY for Appellee Amy S. Butte.

**JUDGES:** Before: JACOBS, Chief Judge, B.D. PARKER and HALL, Circuit Judges.

**OPINION BY:** DENNIS JACOBS

**OPINION**

DENNIS JACOBS, Chief Judge:

Plaintiffs appeal from a July 23, 2009 judgment of the United States District Court for the Southern District of New York (Marrero, J.), dismissing their putative securities class action complaint for failure to state a claim. They allege material misstatements and omissions in the July 2007 prospectus and registration statement of defendant MF Global, Ltd., and assert claims under §§ 11, 12 (a) (2), and 15 of the 1933 Securities Act. In a nutshell, the stock of MF Global plummeted after the February 2008 revelation that a broker had evaded trading restrictions. Of four groups of allegations, dismissal of two is not appealed. As to the claim that the prospectus and registration statement exaggerated risk-management measures, we vacate the dismissal because the district court erroneously applied the bespeaks-caution doctrine. As to the remaining claim, that the prospectus and registration statement failed to disclose deficiencies in the firm's **[\*3]**

controls of client accounts, we affirm in part the district court's dismissal for lack of causation, and in part vacate and remand.

**I**

In the morning hours of February 27, 2008, a broker at MF Global, Ltd. lost $ 141.5 million speculating in wheat futures.[1] The broker, Evan Dooley, accumulated the losses by taking positions vastly in excess of the firm's trading limits and collateral requirements. MF Global was responsible for settling Dooley's trades at the clearinghouse, and absorbed the losses. When news reached the markets on February 28, MF Global's stock price fell 28%; it fell a further 17% the day after, resulting in a two-day market capitalization loss exceeding $ 1.1 billion.

> [1] These facts, drawn from the plaintiffs' complaint, are taken as true. See, e.g., *Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010)* (When "review[ing] . . . a district court's dismissal for failure to state a claim," we "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true.").

The Dooley trading incident revealed to the public that MF Global's internal risk controls had not been applied to brokers trading for their own accounts (or taking client orders by [*4] phone). MF Global had controls for limiting its exposure to market risks in brokerage accounts by restricting trading and by managing margin credit with collateral and other requirements. But MF Global sometimes deactivated the controls (as with Dooley) to speed transactions.

This putative class action was filed on March 6, 2008, alleging, on behalf of certain purchasers of MF Global stock, that the firm misrepresented and failed to disclose relevant material information in a prospectus and registration statement[2] issued when the brokerage firm went public in July 2007. Until its initial public offering (IPO), MF Global had been the brokerage arm of Man Group, Plc, a hedge fund. The defendants are MF Global, Man Group, the IPO underwriters, and various MF Global officers and directors. Damages are sought under §§ 11, 12(a)(2), and 15 of the 1933 Securities Act,[3] *15 U.S.C. §§ 77k, 77l(a)(2) & 77o*.

> [2] The prospectus and registration statement contained substantially similar statements and wording in relevant part. Any analysis of statements or omissions in either is therefore equally applicable to the other.
>
> [3] Section 11 imposes liability for material misstatements and omissions in registration [*5] statements. See *15 U.S.C. § 77k(a)*. And § 12(a)(2) imposes liability for material misstatements and omissions in prospectuses (and certain other communications). See *15 U.S.C. § 77l(a)(2)*.
>
> Section 15 imposes joint and several vicarious liability for violations of §§ 11 and 12 on any person who "controls" the primary violator. See *15 U.S.C. § 77o*. The fate of the plaintiffs' § 15 claim is therefore wholly dependent on our disposition of their § 11 and § 12 claims, and will not be analyzed separately here.

In response to a motion under *Federal Rule of Civil Procedure 12(b)(6)*, the district court dismissed the complaint in its entirety. See *Rubin v. MF Global, Ltd., 634 F. Supp. 2d 459 (S.D.N.Y. 2009)*. The district court sorted the allegations into four groups, *id. at 469-72*, each of which it analyzed separately:

> [1] Directional Trading: That the prospectus misrepresented the types of trading--directional[4] or only hedging--conducted by MF Global;
>
> [2] Refco: That the prospectus failed to disclose the lack of adjustments to MF Global's risk-

management systems made during and after Man Group's acquisition of Refco, another brokerage firm;

[3] Risk Management: That the prospectus misrepresented **[*6]** and failed to disclose material facts relevant to the strengths and weaknesses of MF Global's risk-management system; and

[4] Client Accounts: That the prospectus failed to disclose "that traders did not have limits when trading for clients, and that with the proper password anyone could access client accounts and trade in them at any time," *id. at 470*;

The court dismissed the first group of allegations on the ground that the cited statements were not false or misleading, and the second on the ground that the plaintiffs had insufficiently alleged the omission of any material fact. The plaintiffs do not appeal those specific rulings. Claims premised on allegations concerning risk management were dismissed on the ground that cautionary language elsewhere in the prospectus [5] rendered the cited statements or omissions non-actionable pursuant to the bespeaks-caution doctrine. (An alternative ground is discussed in note 13.) The fourth category of allegations (concerning client accounts) was dismissed on the ground that alleged omissions concerning the accounts of clients could not have caused the loss alleged, which resulted from revelations concerning the accounts of non-clients. [6]

4   A directional **[*7]** trade is an affirmative bet on the market that increases the trader's risk--in contrast to a hedging trade, which reduces risk.

5   The prospectus's relevant cautionary language included the following:

. "[O]ur risk-management methods may prove to be ineffective because of their design, their implementation or the lack of adequate, accurate or timely information. If our risk-management efforts are ineffective, we could suffer losses that could have a material adverse effect on our financial condition or operating results."

. "[W]e are exposed to . . . risks relating to employee misconduct. Among other things, our employees could execute unauthorized transactions for our clients or for their own or any of our accounts."

6   The district court dismissed all claims without prejudice to repleading provided that the plaintiffs could "plausibly show [] that such a repleading would not be futile." *Rubin, 634 F. Supp. 2d at 475*. The plaintiffs subsequently proffered an amended complaint; but after reviewing it the district court denied leave to replead, "find[ing] that the filing of the Proposed Amended Complaint would be futile." Though the plaintiffs contest this denial on appeal, for the reasons **[*8]** set out in note 13 we need not reach that assignment of error.

The plaintiffs timely appealed. We review the district court's order de novo. E.g., *Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010)*.

II

To prevail on a § 11 or § 12 (a) (2) claim, a plaintiff must show that the relevant communi-

cation either misstated or omitted a material fact. See *15 U.S.C. § 77k*; *15 U.S.C. § 77l(a)(2)*. The bespeaks-caution doctrine is a corollary of "the well-established principle that a statement or omission must be considered in context." [7] *In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 364 (3d Cir. 1993)*; accord, e.g., *Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1213 (1st Cir. 1996)*; *Fecht v. Price Co., 70 F.3d 1078, 1081-82 (9th Cir. 1995)*; *Rubinstein v. Collins, 20 F.3d 160, 167-68 (5th Cir. 1994)*. A forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading. [8] See, e.g., *P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 96-97 (2d Cir. 2004)*. In such circumstances, it cannot be supposed by a reasonable investor that the future is settled, or unattended by contingency. **[*9]** For example, Luce v. Edelstein held that statements in an offering memorandum "as to the potential cash and tax benefits of [a] partnership" were non-actionable because "the Offering Memorandum made it quite clear that its projections of potential cash and tax benefits were 'necessarily speculative in nature[,]' . . . that '[n]o assurance [could] be given that these projections [would] be realized,'" and "that '[a]ctual results may vary from the predictions and these variations may be material.'" *802 F.2d 49, 56 (2d Cir. 1986)*.

> 7 The doctrine (and phrase) seems to have appeared first in Polin v. Conductron Corp., which held that statements "of expectation, of anticipation, and of possibilities" "bespeak caution in outlook and fall far short of the assurances required for a finding of falsity and fraud." *552 F.2d 797, 806 n.28 (8th Cir. 1977)*. In this Circuit, the doctrine first appeared when it was quoted approvingly in dicta in *Goldman v. Belden, 754 F.2d 1059, 1068 (2d Cir. 1985)*; it was first applied in *Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)*.
>
> 8 Though we originally applied bespeaks caution to an action under § 10(b) of the 1934 Securities Exchange Act, *15 U.S.C. § 78j(b)*, **[*10]** see *Luce, 802 F.2d at 56*, we have since applied the doctrine to actions under § 11, see, e.g., *Rombach v. Chang, 355 F.3d 164, 172-74 (2d Cir. 2004)*, and § 12 (a) (2), see, e.g., *P. Stolz Family P'ship L.P v. Daum, 355 F.3d 92, 96-98 (2d Cir. 2004)*, of the 1933 Securities Act.

The doctrine is one of a set of rules coping with the problem that forward-looking information poses for securities disclosure laws. For decades, the disclosure of forward-looking information was generally prohibited by the Securities and Exchange Commission (SEC). [9] That policy changed in the 1970s. [10] To encourage disclosure of forward-looking information notwithstanding certain vulnerabilities, including the tendency of predictions to be embarrassed by the passage of time, [11] regulators developed safe harbors. The SEC promulgated a regulatory safe harbor in 1979, see Safe Harbor Rule for Projections, Securities Act Release No. 532, 1979 WL 181199 (June 25, 1979) (codified as amended at *17 C.F.R. §§ 230.175, 240.3b-6*); and Congress followed suit in 1995, see Private Securities Litigation Reform Act of 1995 § 102(a), Pub. L. No. 104-67, 109 Stat. 737, 749 (codified at *15 U.S.C. § 77z-2*). Bespeaks caution is the **[*11]** courts' contribution.

> 9 E.g. Statement by the Commission on the Disclosure of Projections of Future Economic Performance, Securities Act Release No. 5362, 1973 WL 149309, at *1 (Feb. 2, 1973); Louis Loss et al., 2 Securities Regulation 77 & n.80 (4th ed. 2007).
>
> 10 See generally Safe Harbor for Forward-Looking Statements, Securities Act Release No. 2324, 1994 WL 562021 (Oct. 13, 1994) (recounting history of

SEC policy toward forward-looking information).

11   See Statement by the Commission on the Disclosure of Projections of Future Economic Performance, Securities Act Release No. 5362, 1973 WL 149309, at *3 (Feb. 2, 1973).

It is settled that the bespeaks-caution doctrine applies only to statements that are forward-looking. See *P. Stolz Family P'ship, 355 F.3d at 96-97* & n.3 (adopting explicitly a forward-looking limitation to the bespeaks-caution doctrine, but acknowledging that "elaborating such a distinction may be unnecessary" "[b]ecause the 'bespeaks caution' doctrine is often defined with respect to forward-looking statements"). We have consistently observed that limitation.

In P. Stolz Family Partnership, for example, the doctrine insulated predictions of future capital-raising transactions [*12] ("a sought-after $ 30 million or a future IPO"), but not statements about "the existence of an agreement to try to plan an IPO." *Id. at 97-98*. Most recently, in *Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004)*, we applied bespeaks caution to statements of optimism concerning the future performance of newly acquired businesses, see *id. at 172-76*; but not to alleged omissions of information concerning existing financial and operational difficulties, see *id. at 173*. More examples are set out in the margin. 12

12   In Luce, we applied bespeaks caution to predictions of "potential cash and tax benefits." *802 F.2d at 56*.

In I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc., we applied bespeaks caution to predictions of a security's performance (though we doubted that the challenged statement expressed any prediction at all). *936 F.2d 759, 762-63 (2d Cir. 1991)*

In Olkey v. Hyperion 1999 Term Trust, Inc., we applied bespeaks caution to predictions of an asset manager's ability to hedge interest rate risk. *98 F.3d 2, 9-10 (2d Cir. 1996)*.

In Hunt v. Alliance North American Government Income Trust, Inc., we declined to apply bespeaks caution to statements by a mutual fund that it "intended [*13] to use hedging devices" insofar as those statements suggested that such hedging devices were available to the fund even while "the Fund managers [allegedly] knew (or recklessly disregarded) that these hedging techniques were not available (because they were too costly)." *159 F.3d 723, 728-29 (2d Cir. 1998)*.

In Halperin v. eBanker USA.com, Inc., we applied bespeaks caution to statements of "future plans," that "[t]he Company intends to endeavor to file registration statements with the SEC," which the plaintiffs alleged was materially misleading insofar as it overstated the likelihood of registration. *295 F.3d 352, 355, 359-60 (2d Cir. 2002)*.

Here, it is alleged for example that the prospectus "failed to disclose the material fact that [MF Global's] Risk Management System protocols and procedures . . . did not apply to the Company's employees . . . [when] trading for their own accounts." That allegation specifies an omission of present fact, to which bespeaks caution does not apply: The applicability of MF Global's risk-management system to employee accounts was ascertainable when the challenged statements were made. It was therefore error for the district court to rely on the bespeaks-caution [*14] doctrine to dismiss that claim.

The district court asked whether "Plaintiffs are essentially alleging that Defendants failed to disclose the risk of a future negative event."

*Rubin, 634 F. Supp. 2d at 468*. The doctrine then was applied to immunize any statement that the court deemed to be "essentially alleging" the non-disclosure of a risk, regardless of whether the statement looked to the future or was rooted in the known present:

> The Court finds that it is appropriate to apply the "bespeaks caution" doctrine here because Plaintiffs' objections to misrepresentations about specific or general shortcomings in MF Global's risk management system that existed at the time the Prospectus was issued are, in fact, objections to Defendants' alleged failure to disclose the possibility that the risk management system might be unable to prevent future negative outcomes.

*Id. at 472*. This misstates the threshold test, and applies the bespeaks-caution doctrine too broadly. [13]

> 13   In the alternative, the district court held that the plaintiffs' risk-management allegations failed to state a claim because they focused on systemic risk-management problems only in February 2008, when the trading incident occurred, [*15] not in July 2007, at the time the prospectus and registration statement issued:
>
>> Plaintiffs' allegations are based on information about the MF Global risk management system that was disclosed after the February 2008 Trading Incident. . . . [T]here is nothing to indicate that this was the state of affairs in July 2007, when the Prospectus was issued. In other words, Plaintiffs have offered no factual averments that the alleged misrepresentations and omissions were, in fact, false or misleading at the time the Prospectus was issued.
>
> *Rubin, 634 F. Supp. 2d at 474*. This conclusion fails to draw a reasonable inference in the plaintiffs' favor. See, e.g., *In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 692 (2d Cir. 2009)* (stating that courts must "draw [] all inferences in favor of the plaintiff" when ruling on a motion to dismiss). Depending on the problem, its existence in February 2008 may support an inference that it was present six months earlier. This is sufficient "'to raise [the plaintiffs'] right to relief above the speculative level.'" *Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*.

Because [*16] we reject this alternative basis, we need not reach the plaintiffs' argument that the district court erred by denying their motion to replead. The plaintiffs argue here that their preferred repleading remedied deficiencies in the operative complaint by sufficiently showing that MF Global's risk-management lacunae existed when the prospectus and registration statement issued. The operative complaint supports that inference without amendment.

The district court worried that "[p]laintiffs in securities fraud actions can easily characterize many alleged misrepresentations or omissions regarding the risk of future negative events as statements that simply concern discrete present or historical fact." *Id. at 468*. "For

example, an allegation that a corporation failed to disclose the risk that it would default on outstanding financial obligations in the future could just as easily be characterized as a failure to disclose present or historical financial instability." Id.

Investors are interested in issuer statements only insofar as those statements bear on the future. But while it is true that predictions about the future can represent interpretations of present facts (and vice versa), there **[*17]** is a discernible difference between a forecast and a fact, and courts are competent to distinguish between the two. A forward-looking statement (accompanied by cautionary language) expresses the issuer's inherently contingent prediction of risk or future cash flow; a non-forward-looking statement provides an ascertainable or verifiable basis for the investor to make his own prediction.

The line can be hard to draw, and we do not now undertake to draw one. However, a statement specifying the risk of default is distinct from a statement of present or historical financial instability, even though they both bear upon the same risk. And a statement of confidence in a firm's operations may be forward-looking--and thus insulated by the bespeaks-caution doctrine--even while statements or omissions as to the operations in place (and present intentions as to future operations) are not.

A statement may contain some elements that look forward and others that do not. *Shaw, 82 F.3d at 1213*. A characterization of present or historical fact may be partially predictive.¹⁴ See, e.g., *id. at 1213* (holding that a statement that restructuring reserve was "adequate" is forward-looking insofar as it "suggests **[*18]** that [the issuer] would take no further restructuring charges in the near-term future."). A present fact like an appraisal or valuation may depend on predictions: of future cash flows for example, or future risks. Donald C. Langevoort, Disclosures That "Bespeak Cau-

tion", *49 Bus. Law. 481, 489 (1994)*. A forecast may extrapolate present or historical facts into the future. Id. But in each instance the forward-looking elements and the non-forward-looking are severable.

> 14  Some of the "puffery" cases (those analyzing puffing of present or historical facts) can be seen as falling into this category: To the extent that puffery suggests a rosy future, the principle underlying bespeaks caution applies. See, e.g., *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 205-06 (2d Cir. 2009)* ("Puffery" statements that issuer's risk management was effective and "highly disciplined" would not be relied upon by a reasonable investor because they "did not, and could not, amount to a guarantee that [the issuer's] choices would prevent failures in its risk management practices.").

Here, characterizations of MF Global's risk-management system--that the system was "robust," **[*19]** for example--invite the inference that the system will reduce the firm's risk. However, bespeaks caution does not apply insofar as those characterizations communicate present or historical fact as to the measures taken. *Rombach, 355 F.3d at 173* ("Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired.").

We remand to the district court to analyze the plaintiffs' remaining allegations under the standard set out above.¹⁵

> 15  MF Global remarks in a footnote that the heightened pleading standard of *Federal Rule of Civil Procedure 9(b)* may apply to at least some of the plaintiffs' allegations. See generally *Rombach, 355 F.3d at 171* (holding that "the heightened pleading standard of *Rule 9(b)* applies to

Section 11 and Section 12 (a) (2) claims insofar as the claims are premised on allegations of fraud"). The district court declined to address this issue, see *Rubin, 634 F. Supp. 2d at 469*, and so do we. See, e.g., *Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001)* ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal **[*20]** quotation marks omitted)); *Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998)* ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

## III

The plaintiffs also challenge the dismissal of their "client accounts" allegations: that the prospectus failed to disclose "that traders did not have limits when trading for clients, and that with the proper password anyone could access client accounts and trade in them at any time," *Rubin, 634 F. Supp. 2d at 470*. The district court dismissed these allegations on the ground that the plaintiffs' alleged losses resulted from the failure to manage trading risks in accounts of non-clients (such as Dooley), and that the losses therefore were not caused by alleged misstatements or omissions concerning accounts of clients.

Loss causation is not an element of a plaintiff's prima facie case; rather, the absence of loss causation is an affirmative defense. See *15 U.S.C. §§ 77k(e)*, *77l(b)*. A causation defense prevails if the defendant "proves" that an otherwise recoverable loss was not caused by the alleged misstatement or omission. Id. "An affirmative defense may be raised by a pre-answer motion **[*21]** to dismiss under *Rule 12(b)(6)* . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)*.

The district court dismissed the plaintiffs' client accounts allegations because "the Trading Incident that sparked the sharp drop in MF Global's stock price, which caused the losses that Plaintiffs complain of, had nothing to do with MF Global's trading for clients or trading in or access to client accounts. . . . Rather, the Trading Incident involved trades in a non-client account." *Rubin, 634 F. Supp. 2d. at 470*.

This is sound as far as it goes. But the Dooley trading incident (and events precipitated by it) revealed that risk-management deficiencies affected client accounts as well. Shortly after the Dooley incident, MF Global "acknowledged that existing internal controls could have stopped Mr. Dooley's trades from being processed--but were turned off in a few cases to allow for speedier transactions by brokers at the firm who traded for themselves *or took customer orders by phone*." (emphasis added). Thus, at least as to phone orders, the firm's risk-management controls did not reliably constrain brokers who executed trades **[*22]** on behalf of clients. Unsurprisingly, a managing director at Fitch Ratings publicly stated that the Dooley incident "does open the view that [MF Global's] *customers* are taking more risk than we thought." (emphasis added). This concern--likely shared by others--may have had a negative impact on MF Global's stock price because client business might be lost and because clients' market risks are at least partially shared by the firm.

However, neither the Dooley trading incident nor subsequent events revealed to the public that "anyone with the password could access client accounts . . . and trade at will therein," as the plaintiffs allege. This allegation concerns a security risk, of client fund misappropriation--not the sort of risk made plain by and after the Dooley losses. It is therefore "app[arent] on the face of the complaint," *Pani, 152 F.3d at 74*, that the stock price decline (and the plaintiffs' resulting losses) cannot be attributed to the pro-

spectus's failure to disclose that alleged fact; and the allegation was properly dismissed.

Accordingly, we affirm the district court insofar as it dismissed the plaintiffs' allegation concerning access to client accounts; but vacate and remand **[\*23]** insofar as it dismissed their allegation that telephone orders were not subject to risk management.

\* \* \*

For the foregoing reasons, the district court's judgment is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

## DECLARATION OF SERVICE BY CM/ECF AND/OR MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071-3149.

2. Declarant hereby certifies that on September 24, 2010, declarant served the **PLAINTIFF'S NOTICE OF RECENT AUTHORITY** by electronically filing the foregoing document listed above by using the Case Management/ Electronic Case filing system.

3. Declarant further certifies:

☒ All participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system

☐ Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.  Participants in the case that are not registered CM/ECF users will be served by First-Class Mail, postage pre-paid or have dispatched to a third-party commercial carrier for delivery to the non-CM/ECF participants as addressed and listed in the Service List.

4. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of September, 2010, at Los Angeles, California.

_Cecille Chaffins_
CECILLE CHAFFINS

- 14 -
PLAINTIFF'S NOTICE OF RECENT AUTHORITY

DOCS\530915v1